[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 174.]

THE STATE OF OHIO, APPELLEE, *v*. ELEY, APPELLANT.

[Cite as *State v. Eley*, 1996-Ohio-323.]

*Criminal* law—Aggravated *murder*—*Death penalty upheld, when.*

(No. 96-285—Submitted October 16, 1996—Decided December 18, 1996.)

APPEAL from the Court of Appeals for Mahoning County, No. 87 C.A. 122.

———————————

{¶ 1} On August 26, 1986, defendant-appellant, John Jeffrey Eley, shot and killed Ihsan "Easy" Aydah during a robbery of the Sinjil Market in Youngstown, Ohio. Eley confessed to the killing, and was subsequently convicted of aggravated murder and aggravated robbery, and sentenced to death.

{¶ 2} During the early afternoon of August 26, 1986, Eley was visiting Melvin Green at the home of Green's girlfriend in Youngstown. According to Eley, he and Green were just sitting around when Green suggested that they go down to the "Arab store." Eley and Green left the house and proceeded down a path through the woods leading to the Sinjil Market. Along the way, Green showed Eley a "Black Snub nose gun," and told Eley he "was going to take the Arab off." Since the proprietor of the store, Ihsan Aydah, knew Green's face, Eley agreed to go in alone and rob the store while Green waited outside.

{¶ 3} Eley entered the store and told Aydah to put his hands up and to turn and face the wall. Green had told Eley that Aydah had a gun under the store counter, so when Aydah lowered his hands and went under the counter, Eley fired a shot. Eley claimed that he aimed at Aydah's shoulder. However, the shot hit Aydah on the right side of his head, approximately four inches above the earlobe. Aydah died the next day of shock and hemorrhage due to a gunshot wound to the head.

{¶ 4} Just before Eley fired the gun, Green entered the store. After the shot, Green ran behind the counter and got into the cash register. He took Aydah's wallet while Aydah lay wounded on the floor. As the two left the store, Green gave Eley a brown paper bag with the money and wallet. According to Eley, they went up the street, "got to the path and ran up the woods."

{¶ 5} Around 2:00 to 2:30 p.m. that day, Cheryl E. Cooper left home for the Sinjil Market with her three children. Cooper saw Melvin Green and another man enter the path to the store "walking fast in front of us." Cooper saw the pair turning the corner heading to the store, and noticed that neither man was carrying anything at that time. Shortly thereafter, Cooper saw Melvin Green and the other man, who was carrying a brown paper bag, come around the corner, passing them halfway on Davis Lane. When Cooper arrived at the Sinjil Market, she saw magazines and cigarettes strewn all over the floor. She looked over the counter and saw Aydah lying on the floor.

{¶ 6} Christopher Cretella lived half a block from the Sinjil Market, and around 2:30 p.m. that day was outside washing a car in his driveway. He saw Melvin Green and "another fellow" walking away from the store, and then running toward the path, right into the woods. Cretella noticed the pair holding a bag and passing something back and forth. Two weeks before the murder, Cretella had seen Green and Aydah "[having] some words," and "Easy told him to get out and not to come back."

{¶ 7} Several days after the murder, Eley was arrested by Youngstown police at the residence of his cousin's girlfriend, Carlotta Skinner. After his arrest, Eley told police that he and Green had split the money taken in the robbery, which was around $700. However, Eley later gave the money back to Green "because he said it was all on him and he had to get out."

{¶ 8} After apprehending Eley, Lt. Robert Kane, Detective Joseph Fajack, and Detective James Pasquale of the Youngstown Police Department brought Eley

into the roll call room at police headquarters. There, Eley was given his *Miranda* rights, and signed two forms. In the first form, Eley waived his *Miranda* rights; in the second, Eley indicated that he could read and write English and reiterated the waiver of *Miranda* rights and his desire to make a voluntary statement.

{¶ 9} Eley told the detectives that he wanted to talk about his involvement in the Aydah murder. Although there were tape-recording and video-equipment devices available nearby, Fajack stated that he and the officers present "did not have access" to them. Therefore, Fajack conducted his interview with Eley by writing down each of the questions asked. Below each question, Fajack transcribed Eley's response verbatim.

{¶ 10} In his voluntary statement Eley admitted that he and Green had robbed the Sinjil Market, and that he shot Aydah. Fajack testified that Eley did not appear to be under the influence of alcohol or drugs during the interview and was "very calm" and "passive."

{¶ 11} The grand jury indicted Eley on one count of aggravated murder with a specification that the murder was committed during, or immediately after, the commission of an aggravated robbery (R.C. 2929.04[A][7]), and that Eley was the principal offender. This count also carried a firearm specification. In addition, Eley was indicted on one count of aggravated robbery (R.C. 2911.01[A][1 and [2]) and one count of conspiracy (R.C. 2923.01[A]). Each count carried a firearm specification.

{¶ 12} In May 1987, Eley waived his right to a jury trial and opted for a trial before a three-judge panel. Eley pled not guilty to the charges against him, thereby withdrawing a prior plea of not guilty by reason of insanity. In May 1987, the trial court rejected Eley's motion to suppress his confession and found that Eley had made a knowing, intelligent ,and voluntary waiver of his rights at the time of the confession.

{¶ 13} Trial was held before a three-judge panel on May 11-12, 1987, but the defense chose not to present any evidence. The panel found Eley guilty of aggravated murder, aggravated robbery, the felony-murder capital specification, and two of the three firearm specifications, but not guilty of conspiracy.

{¶ 14} During the mitigation hearing, several family members testified on Eley's behalf. Eley's mother, Cecilia Joseph, divorced Eley's father when Eley was seven or eight years old, and stated that Eley had "not much" of a relationship with his father. Joseph testified that on Christmas night 1964, her second husband had been drinking and began choking her and her daughter. At that time, Eley stabbed the second husband with a knife in order to stop him. Joseph testified that Eley dropped out of high school in the ninth grade, but later entered the Job Corps and learned to be a welder. Eley sent money home to his mother during this time, and gave her money to help her finish paying for nursing school. Joseph stated that while Eley has had problems with drugs and alcohol, he is a better person when he is not under the influence. She characterized Eley as "church oriented," and believed he had been "born again."

{¶ 15} Eley's sister, Susan Laury, testified that Eley had helped the family financially while he was in the Job Corps, and that Eley is normally a "quiet, sweet, gentle person that wouldn't hurt anybody."

{¶ 16} Dr. Douglas Darnall, a clinical psychologist, found Eley to be of borderline intelligence, and ranked him in the twelfth percentile on the Wechsler Adult Intelligence Test. According to Darnall, Eley has a history of chronic alcohol and polysubstance abuse, but exhibited "no evidence of psychosis or major defective disorder." In addition, Darnall testified that Eley understands the difference between right and wrong. Darnall found Eley to be remorseful, but Eley never mentioned that he felt remorse for the victim. However, two police officers who witnessed Eley's confession testified that Eley was remorseful before he made

4

that statement. Eley made a short unsworn statement at the mitigation phase that consisted of several biblical quotations from the Book of Romans.

{¶ 17} After deliberation, the panel unanimously found that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt, and sentenced Eley to death. Upon appeal, the court of appeals affirmed the convictions and sentence of death.

{¶ 18} The cause is now before this court upon an appeal as of right.

_____

*James A. Philomena,* Mahoning County Prosecuting Attorney, and *Michele G. Cerni,* Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Linda E. Prucha* and *Cynthia A. Yost,* Assistant Public Defenders, for appellant.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 19} In this appeal, Eley has raised eighteen propositions of law. Finding none meritorious, we affirm his convictions. In addition, we have independently reviewed the record, weighed the aggravating circumstance against the mitigating factors, and compared the proportionality of the death sentence in this case to the penalty imposed in similar cases. Upon a complete review of the record, we affirm Eley's convictions and sentences.

I

*Suppression Issues*

{¶ 20} In Proposition of Law III, Eley contends that his confession to police was the product of his drug and alcohol intoxication, as well as psychological coercion and the manipulative actions of Youngstown police officers. Eley asserts that because of his intoxication at the time of his arrest, he lacked the capacity to comprehend the nature of his right against self-incrimination and the consequences

of waiving it. In addition, Eley argues that he lacked the intelligence to voluntarily waive his constitutional rights.

{¶ 21} During the suppression hearing, both Eley and Carlotta Skinner, with whom he was staying at the time of his arrest, testified that Eley had consumed large quantities of Valium, sleeping pills and alcohol during the two-day period leading up to his arrest. As a result, Eley claims to remember very little about the events subsequent to his arrest when he confessed to the crimes.

{¶ 22} Defense witness Dr. Russell Morrison, a physician, testified that combining alcohol with the drugs Eley allegedly ingested would prolong the effect and deepen one's state of sedation. However, Morrison also stated that ingesting the quantity of alcohol and drugs allegedly consumed by Eley could put a person near death.

{¶ 23} The testimony of the three officers who interrogated Eley weakens defense arguments under this proposition. Detective Fajack stated that he did not notice anything that would indicate that Eley was under the influence of any medication, drugs, or stimulants. Detective Robert Kane testified that Eley told Fajack at the time of the confession that he (Eley) wanted to tell his side of the story of what happened at the Sinjil Market. Detective Pasquale felt that Eley understood the questions posed to him by Fajack.

{¶ 24} Whether a statement was made voluntarily and whether an accused voluntarily, knowingly, and intelligently waived his right to counsel and right against self-incrimination are distinct issues. However, both are measured by the "totality of circumstances" standard. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854. Evidence of police coercion or overreaching is necessary for a finding of involuntariness, and not simply evidence of a low mental aptitude of the interrogee. *State v. Hill (*1992), 64 Ohio St.3d 313, 318, 595 N.E.2d 884, 890, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473, 482-483.

**{¶ 25}** Here, there is no evidence that the police subjected Eley to threats or physical abuse, or deprived him of food, sleep, or medical treatment. See *State v. Cooey* (1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908. The transcript from the suppression hearing reveals no hint or allegation of coercive activity by the police, either in the testimony elicited from the officers or in Eley's testimony. Also, the time between Eley's arrest and confession was not lengthy, as the two events took place less than two hours apart. According to Detective Pasquale, the whole interrogation process with Eley encompassed "roughly an hour." See *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515.

**{¶ 26}** Eley testified at the suppression hearing that he understood his constitutional rights prior to giving his confession to the police. Moreover, evidence of a written waiver form signed by the accused is strong proof that the waiver is valid. *Clark, supra*, 38 Ohio St.3d at 261, 527 N.E.2d at 854, citing *N. Carolina v. Butler* (1979), 441 U.S. 369, 375-376, 99 S.Ct. 1755, 1758-1759, 60 L.Ed.2d 286, 293-294.

**{¶ 27}** Under the totality of the circumstances, we conclude that Eley made a knowing, voluntary, and intelligent waiver of his constitutional rights, and that his confession to police was voluntarily made. Eley's claims of heavy drug and alcohol intoxication are inconsistent with the testimony given by the police officers, nor do they appear to be credible in view of Dr. Morrison's testimony at the suppression hearing. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583, 584 (weight of the evidence and credibility of witnesses are primarily for trier of fact). Accordingly, we overrule Proposition of Law III.

**{¶ 28}** In Proposition of Law IV, Eley claims that the trial court violated Crim.R. 12(E) by failing to state essential findings of fact on the record when it ruled on his motion to suppress the confession. However, Crim.R. 12(E) does not control because Eley did not request factual findings. "[I]n order to invoke the rule, the defendant must request that the court state its essential findings of fact in

support of its denial of a motion. See *Bryan v. Knapp* (1986), 21 Ohio St.3d 64, 21 OBR 363, 488 N.E.2d 142. " *State v. Benner* (1988), 40 Ohio St.3d 301, 317, 533 N.E.2d 701, 718; *State v. Richey* (1992), 64 Ohio St.3d 353, 366, 595 N.E.2d 915, 927; *State v. Brown* (1992), 64 Ohio St.3d 476, 481, 597 N.E.2d 97, 101. Eley's failure to invoke the rule waived any error. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364. Thus, we reject Eley's fourth proposition of law.

II

*Evidentiary Issues*

{¶ 29} In Proposition of Law II, Eley argues that the evidence proffered by the state was insufficient to prove every essential element of the capital crime with which he was charged. Eley further contends that his conviction was against the manifest weight of the evidence.

{¶ 30} When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Id.* at 273, 574 N.E.2d at 503.

{¶ 31} Eley points out that neither of the two witnesses who saw Melvin Green and another man at the scene could identify him as the other person. However, Eley put himself at the crime scene with Green when, in front of three police detectives, he confessed to the killing. The testimony of Cooper and Cretella, who were in the vicinity of the Sinjil Market at the time of the murder, corroborated Eley's confession.

**{¶ 32}** Eley also asserts that he did not possess the culpable mental state required for conviction under R.C. 2903.01(B) and (D), and that specific intent is lacking, since his statement to police indicated that he tried to shoot Aydah in the shoulder. Therefore, Eley submits that his specific intent was only to wound the victim, who was reaching for a gun.

**{¶ 33}** However, intentional use of an inherently dangerous weapon during the commission of a felony, resulting in death, is sufficient to establish the element of purposefulness. *State v. Esparza* (1988), 39 Ohio St.3d 8, 14, 529 N.E.2d 192, 199. Intent need not be proven by direct testimony. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. Instead, an intent to kill "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." *State v. Robinson* (1954), 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517, paragraph five of the syllabus. Here, Eley entered the market with a loaded gun and fired it at Aydah when it appeared that Aydah was reaching for a gun that Green had told him was kept under the counter. Eley's self-serving statement that he was trying to shoot Aydah in the shoulder supports Eley's preferred interpretation as to his intent. However, the evidence and surrounding circumstances strongly support the panel's conclusion that Eley intended to kill Aydah, since the shot allegedly intended for his shoulder struck him in the upper part of his head. Under the evidentiary test outlined in *Jenks, supra*, there was sufficient evidence to convict Eley of aggravated murder.

**{¶ 34}** Eley's manifest-weight argument must also fail, since this court lacks the constitutional power to consider and pass upon the weight of the evidence. *Cooey, supra*, 46 Ohio St.3d at 26, 544 N.E. at 906. This court will not sit as a "'thirteenth juror,'" even in capital cases. *State v. Tyler* (1990), 50 Ohio St.3d 24, 33, 553 N.E.2d 576, 589, quoting *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661.

{¶ 35} In *State v. Post* (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759, this court reaffirmed that it will indulge "in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *Id.*, citing *State v. White* (1968), 15 Ohio St.2d 146, 151, 44 O.O.2d 132, 136, 239 N.E.2d 65, 70. In Proposition of Law VII, Eley asserts that this presumption allows the state to present inflammatory and prejudicial evidence without cost, and thereby denies him due process and equal protection.

{¶ 36} However, we believe that this presumption appropriately credits the judiciary with knowledge of the law and the ability to correctly apply it. Moreover, a capital defendant has a full and fair opportunity to point out any errors occurring during a trial before a three-judge panel, and to subsequently on appeal demonstrate how such errors were relied upon by the court in arriving at its judgment. Eley's arguments in this vein are unpersuasive. Therefore, we reject Proposition of Law VII.

{¶ 37} In Proposition of Law XI, Eley contends that the testimony of the coroner, Dr. Nathan D. Belinky, did not meet the requirements of Evid.R. 703: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Eley contends that Belinky's mere observation of the autopsy performed on Aydah provided insufficient facts upon which he could have based his testimony. Eley submits that since the coroner's report was never admitted into evidence, Belinky's testimony was improper. Eley further asserts that his right to confront and cross-examine witnesses against him was violated.

{¶ 38} At trial, Belinky testified as to the autopsy findings and Aydah's cause of death. While Belinky did not perform the autopsy on Aydah's body, he was present while it was done, and it was done at his direction. However, Belinky admitted that he did not supervise the autopsy or tell the performing pathologist

what to do. Belinky used the coroner's report to refresh his memory while he testified, but the report was not admitted into evidence.

{¶ 39} In *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, we rejected a similar argument that testimony is rendered inadmissible if an expert opinion is based in part on reports not admitted into evidence. Therein, we held that "[w]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *Id.*, syllabus.

{¶ 40} In this case, Belinky, as county coroner, was clearly qualified to testify as an expert when he observed the autopsy performed on the victim. His testimony was based on his personal observations, which were refreshed by the autopsy report and hospital records. Belinky's testimony regarding the entrance wound on Aydah's head was plainly based on his personal observations.

{¶ 41} In addition, Eley's constitutional arguments are not valid. Defense counsel cross-examined Belinky at trial concerning his testimony and, thus, there was no denial of Eley's right to confront and cross-examine witnesses against him. Therefore, we overrule Proposition of Law XI.

{¶ 42} In Proposition of Law XIV, Eley claims that he was denied a fair trial during both phases when the trial court admitted gruesome, inflammatory and repetitive photographic evidence.

{¶ 43} Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 401, 473 N.E.2d 768, 791. Nonrepetitive photographs in capital cases, even if gruesome, are admissible if the probative value of each photograph outweighs the danger of material prejudice to the accused. *Id.* at paragraph seven of the syllabus; *State v. Morales* (1987), 32 Ohio St.3d 252, 258, 513 N.E.2d 267, 273-274.

{¶ 44} A review of the two photos assailed by Eley, State Exhibits 2 and 3, does not support his assertion that they were gruesome or repetitive. The photos at

issue portray two different views of Aydah's cranial area, with the wound sutured closed, and were illustrative of the coroner's testimony. Both are in black-and-white. In addition, the photos were probative of purposefulness in the guilt phase, and were probative in the penalty phase with regard to the aggravating circumstance. Accordingly, we reject Proposition of Law XIV.

III

*Miscellaneous Trial Issues*

{¶ 45} In Proposition of Law VI, Eley argues that the trial panel failed to ensure an intelligent, voluntary, and knowing jury waiver, because it failed to consider his limited intellectual ability in assessing his knowledge of the relevant circumstances and likely consequences of his jury trial waiver.

{¶ 46} In this case, Eley submitted a written jury waiver and opted for a trial before a three-judge panel. While the court questioned Eley at the time about his jury waiver, such an interrogation is not required to determine whether an accused is fully apprised of his or her right to a jury trial. *State v. Jells* (1990), 53 Ohio St.3d 22, 25-26, 559 N.E.2d 464, 468. Eley's bald assertion that he is so mentally challenged as to be incapable of giving a valid waiver is not supported in the record. Moreover, the trial court complied with all the requirements of a jury waiver in this case. See *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, paragraph one of the syllabus. Therefore, Proposition of Law VI is without merit.

{¶ 47} In Proposition of Law IX, Eley alleges that the three-judge panel erred by stating that it would consider the lesser included offenses of murder and involuntary manslaughter only if any of the necessary elements of aggravated murder had not been proven, a procedure rejected in *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph three of the syllabus. The trial transcript, however, does not support Eley's contention.

{¶ 48} The statement challenged by Eley was actually a question asked by one of the panel to the prosecutor:

"JUDGEHOUSER [*sic*]:  May I ask a question?

"MR. ZENA [defense attorney]: Go ahead.

"JUDGE HOUSER:  Mr. Van Brocklin [prosecutor], is it your posture that the lessor [*sic*] included offense of which Mr. Zena says should be considered by the Court—you know—depending on whether aggravated murder with specifications—you know—first we should consider that, but also if any of the necessary elements have not been proven—you know—going to the lessor [*sic*] included offenses.  Is it your posture, sir, that under no circumstances is murder or voluntary manslaughter is a lessor [*sic*] included offense in this case?"

{¶ 49} Here, the judge was asking the prosecutor whether in his view of the case lesser included offenses should be considered by the panel.  The judge was not expressing his own opinion or position, as Eley suggests.  Shortly after this question was posed, Judge Jenkins stated that the panel would consider three charges: aggravated murder, murder, and involuntary manslaughter.  Moreover, it is presumed that the three-judge panel knew the law.  *State v. Davis* (1992), 63 Ohio St.3d 44, 48, 584 N.E.2d 1192, 1195; *Post, supra*, 32 Ohio St.3d at 384, 513 N.E.2d at 759.  Therefore, we overrule Proposition of Law IX.

{¶ 50} In Proposition of Law X, Eley next argues that the trial court should have conducted a competency hearing, since there was a bona fide doubt as to his competency.  See *Pate v. Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815.  Eley submits that the court's failure to conduct such a hearing precluded the development of evidence which would have revealed sufficient indicia of incompetence.

{¶ 51} The record indicates that on December 29, 1986, Eley's counsel requested the appointment of a psychiatric expert and a competency hearing.  The court ordered an examination and on February 4, 1987, set a competency hearing for February 10, 1987.  On February 10, Dr. Douglas Darnall was appointed by the court to reexamine Eley.  The competency hearing, however, was never held.  Then,

on May 11, 1987, Eley withdrew his plea of not guilty by reason of insanity and chose to proceed solely on a plea of not guilty. At that time, Eley filed a document acknowledging that he "knowingly and intelligently" withdrew "any challenge to his competency to proceed with the trial of this action." Thus, Eley affirmatively waived his right to a competency hearing that he previously requested pursuant to R.C. 2945.37.

{¶ 52} Even if we were to find Eley's waiver invalid, any error by the trial court in not conducting a hearing was harmless, since the record fails to reveal sufficient indicia of incompetency. See *State v. Bock* (1986), 28 Ohio St.3d 108, 28 OBR 207, 502 N.E.2d 1016, paragraph one of the syllabus. Other than mentioning a few aspects of his background that were brought out during the mitigation phase, Eley fails to cite any portion of the record which reveals any suggestion of incompetency. Accordingly, we reject Proposition of Law X.

{¶ 53} In Proposition of Law XII, Eley contends that the three-judge panel erred by separating prior to deliberations during both phases of the trial. However, defense counsel expressly declined to object to the separation of judges during either phase of trial. This waived any objection.

{¶ 54} Eley further argues that counsel's failure to object constituted ineffective assistance of counsel. However, counsel lacked any basis to object in light of *State v. Davis*, *supra*, which held that "the rules pertaining to jury sequestration need not apply to a three-judge panel which is presumed to consider only relevant, competent and admissible evidence in its deliberations." *Davis, supra*, 63 Ohio St.3d at 48, 584 N.E.2d at 1196.

{¶ 55} Moreover, Eley fails to demonstrate prejudice, "a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

{¶ 56} Eley next argues that the panel erred in failing to ensure his presence at all proceedings. Specifically, counsel for Eley objected at the beginning of the capital trial that Eley had not been present for the selection process of the three-judge panel. In a related argument, Eley claims that the panel erred in failing to grant his motion for individual voir dire of its members.

{¶ 57} R.C. 2945.06 provides that the three-judge panel is to be composed of three judges: the judge presiding at the time in the trial of criminal cases and two judges to be designated by that judge or by the presiding judge or chief justice of that court. The statute makes no provision for any hearing or voir dire of the judges to be selected for the panel. Since there is no right to voir dire the members of a three-judge panel, Eley's presence during its selection had no "reasonably substantial" relationship "to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts* (1934), 291 U.S. 97, 105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674, 678. Therefore, he had no right to be present when the judges were selected.

{¶ 58} In Proposition of Law XV, Eley contends that R.C. 2901.05(D), which defines "reasonable doubt," encourages the trier of fact to adopt a standard below that which is required by due process. However, we have consistently rejected this argument. See, *e.g., State v. Frazier* (1995), 73 Ohio St.3d 323, 330, 652 N.E.2d 1000, 1008.

IV

*Sentencing Issues*

{¶ 59} In his first proposition of law, Eley contends that the death sentence is inappropriate based on the mitigating evidence. In Proposition of Law V, Eley asserts that the three-judge panel failed to consider and give effect to relevant mitigating evidence.

{¶ 60} In support of both propositions, Eley submits that the substantial evidence in mitigation outweighs the single aggravating circumstance he was found

guilty of committing (*i.e.*, murder during aggravated robbery). Eley claims that the following evidence submitted by him should have precluded imposition of the death penalty: that he came from a dysfunctional family; that despite this, he established positive relationships with other family members; that he has limited intellect and education; that he suffers from chronic alcoholism and polysubstance abuse and related blackouts, which caused him to act out impulsively; that he exercises poor judgment with minimal control of his behavior; that he suffered head injuries as a teenager; that he has behaved well while incarcerated and has undergone a religious conversion; and that Melvin Green, the instigator and planner of the crimes, has gone unpunished.

{¶ 61} While a defendant has wide latitude in introducing any evidence alleged to be mitigating, a court is not necessarily required to accept as mitigating everything offered by the defendant and admitted. Nor is the court automatically required to give such admissible evidence any weight. *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus. While Eley's family background may have been dysfunctional, the fact that others with similar backgrounds have grown up as law-abiding citizens tends to diminish this factor as mitigating. *Id.* at 129, 31 OBR at 288, 509 N.E.2d at 399.

{¶ 62} Likewise, Eley's assertions about his intellectual ability, alcoholism, and polysubstance abuse have diminished mitigating value in light of Darnall's testimony. Darnall testified that Eley was literate, could function day to day, and was sane and competent at the time of the murder. Moreover, Darnall opined that it did not appear that Eley was in any alcohol- or drug-induced blackout when the murder took place

{¶ 63} Although Eley's accomplice, Melvin Green, was acquitted, disparity of treatment between accomplices does not justify reversal of a death sentence where the sentence is neither illegal nor an abuse of discretion. *State v. Burke*

16

(1995), 73 Ohio St.3d 399, 407, 653 N.E.2d 242, 249; *State v. Green* (1993), 66 Ohio St.3d 141, 151, 609 N.E.2d 1253, 1261.

{¶ 64} Other points raised by Eley will be discussed as part of this court's independent review.  Even if error did occur in the courts below, it can be readily cured by this court's independent review and assessment.  *Lott, supra,* 51 Ohio St.3d at 170, 555 N.E.2d at 304.

{¶ 65} In Proposition of Law XIII, Eley argues that the trial court erred in considering information in the presentence investigation ("PSI") report about former charges brought against him that were dismissed.  However, the inclusion of this information in the PSI report was not erroneous.  *Cooey, supra,* 46 Ohio St.3d at 35, 544 N.E.2d at 914; *State v. Hutton* (1990), 53 Ohio St.3d 36, 559 N.E.2d 432, paragraph one of the syllabus.

{¶ 66} Eley also claims that the court erroneously considered the prosecutor's death penalty recommendation, which was included in the PSI report.  In *Cooey,* the defendant similarly claimed error where the PSI report included a police captain's death penalty recommendation.  As in *Cooey, supra*, it does not appear that the trial court placed any reliance on the prosecutor's recommendation.  Any error is harmless.  *Id*. at 35, 544 N.E.2d at 914.

{¶ 67} In Proposition of Law XVI, Eley contends that the proportionality review process required by R.C. 2929.05 is fatally flawed.  We have rejected this argument many times.  See, *e.g., Steffen, supra*, 31 Ohio St.3d at 123, 31 OBR at 273, 509 N.E.2d at 394, and paragraph one of the syllabus.

{¶ 68} Eley also argues that his sentence is disproportionate given the fate of Melvin Green, who was acquitted of an aggravated murder charge for Aydah's death in a separate trial.  Eley asserts that his death sentence was arbitrary and inappropriate, since Green planned the crime and was the only person identified near the crime scene.

{¶ 69} *Steffen, Burke,* and *Green, supra,* make clear that Green's acquittal is irrelevant to proportionality review. Obviously, since Green was acquitted, his is not a "similar" case under R.C. 2929.05(A).

V

*Prosecutorial Misconduct*

{¶ 70} Under Proposition of Law VIII, Eley alleges seven areas of prosecutorial misconduct encompassing both phases of the trial: (1) misstatements concerning the evidence and permissible inferences; (2) inappropriate expression of opinion regarding the truth or falsity of testimony and other evidence; (3) misstatements concerning the amount and quality of mitigating evidence and the law applicable thereto; (4) inflammatory arguments; (5) injection of extraneous issues to improperly influence deliberations; (6) presentation of nonstatutory aggravating circumstances; and (7) cumulative misconduct.

{¶ 71} The test for prosecutorial misconduct is whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15, 14 OBR 317, 318, 470 N.E.2d 883, 885. In this case it is presumed that the three-judge panel considered only relevant, competent, and admissible evidence in its deliberations. *Davis, supra*, 63 Ohio St.3d at 48, 584 N.E.2d at 1195. In addition, the prosecution is entitled to a certain degree of latitude in summation. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 589, 23 O.O.3d 489, 493, 433 N.E.2d 561, 566.

{¶ 72} (1) With respect to alleged misstatements of evidence and impermissible inferences, no objection was raised by Eley at the time any of the cited statements were made. Therefore, all but plain error is waived. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 925. Except for the second statement cited by Eley, that Aydah "expired about three or four hours after the shooting," all of these statements were reasonable inferences that could be drawn from the evidence. See *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 53 O.O.2d

182, 185, 263 N.E.2d 773, 777. Moreover, both parties are permitted wide latitude during closing argument. *State v. Brown* (1988), 38 Ohio St.3d 305, 317, 528 N.E.2d 523, 538. Eley has not demonstrated that the one misstatement set forth above clearly altered the outcome of the trial. See *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

{¶ 73} (2) With regard to Eley's allegations of inappropriate expressions of opinion by the prosecutor, the six statements cited by Eley as inappropriate were not objected to and, therefore, all but plain error is waived. *Slagle, supra*. Moreover, none of the alleged expressions of opinion was improper. The prosecutor was simply arguing his case. Plain error is absent here.

{¶ 74} (3) Eley alleges prosecutorial misstatements concerning the amount and quality of mitigating evidence. Generally, the prosecution is entitled to challenge defense mitigation evidence by cross-examination or rebuttal. *Lott, supra*, 51 Ohio St.3d at 174, 555 N.E.2d at 307. Moreover, even if these comments were improper, they did not prejudicially affect the substantial rights of Eley. *Smith, supra*, 14 Ohio St.3d at 14, 14 OBR at 318, 470 N.E.2d at 885. The panel is presumed to have considered only relevant, competent and admissible evidence in its deliberations. *Davis, supra*, 63 Ohio St.3d at 48, 584 N.E.2d at 1195. Moreover, any prejudicial impact is minimized by this court's independent review. *State v. Lundgren* (1995), 73 Ohio St.3d 474, 486, 653 N.E.2d 304, 318.

{¶ 75} (4) Eley next complains about inflammatory arguments made by the prosecutor that he contends deprived him of a fair trial. However, Eley's failure to object to any of the cited statements waives all but plain error. *Slagle, supra*. None of these statements constituted plain error, since they were clearly not outcome-determinative. *Long, supra*.

{¶ 76} (5) Eley argues that the prosecutor improperly urged the sentencer to impose the death penalty based on something other than individualized determination of the appropriateness of his sentence. However, the panel is

presumed to know the law and to consider only relevant, competent and admissible evidence in its deliberations. *Davis, supra*. Any error is harmless at best.

**{¶ 77}** (6) Next, Eley contends that the prosecutor argued nonstatutory aggravating circumstances. Eley relies on *State v. Penix* (1987), 32 Ohio St.3d 369, 371, 513 N.E.2d 744, 746, for the proposition that it is error to invoke the words "prior calculation and design" when referring to an offender who personally killed the victim. However, a review of the context in which the words "prior calculation and design" were invoked indicates that such terminology was not being argued as an additional, uncharged aggravating circumstance. Thus, *Penix* is readily distinguishable.

**{¶ 78}** (7) Last, Eley relies on State v. *Thompson* (1987), 33 Ohio St.3d 1, 14, 514 N.E.2d 407, 420, in arguing that the accumulation of prosecutorial misconduct during closing arguments in both phases impaired his right to a fair trial. However, the record indicates that Eley received a fair trial, that the closing arguments were generally within the bounds of propriety, and that any error committed by the prosecutor was clearly nonprejudicial. Therefore, *Thompson* does not require reversal. Accordingly, we overrule Eley's Proposition of Law VIII.

VI

*Constitutionality*

**{¶ 79}** In Propositions of Law XVII and XVIII, Eley raises several arguments claiming that Ohio's death penalty provisions are unconstitutional on their face and as applied. However, these arguments have previously been rejected by this court and are summarily rejected here. *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus.

VII

*Independent Review and Proportionality Analysis*

{¶ 80} After independent assessment, we find that the evidence supports beyond a reasonable doubt that Eley murdered Ihsan "Easy" Aydah while committing or attempting to commit aggravated robbery, and that Eley was the principal offender in the aggravated murder. R.C. 2929.04(A)(7).

{¶ 81} We find nothing in the nature and circumstances to be mitigating. Eley participated in a robbery where, under the circumstances, a murder was likely to occur. Eley used a gun, and was aware that the proprietor kept a gun under the store counter. After shooting Aydah and fleeing the scene of the crime, Eley divided the stolen money with his accomplice, and then hid out until his arrest.

{¶ 82} Eley's history, character, and background are entitled to modest weight in mitigation. Eley was seven or eight years of age when his parents divorced, and he had a weak relationship with his father. At one time, Eley had a good relationship with his stepfather, but the stepfather would get "nasty" when he drank alcohol. On one occasion, he physically abused Eley's mother and sister. Eley defended them by stabbing his stepfather.

{¶ 83} Eley's mother and sister testified that Eley had expressed frustration over being placed in slow learner classes, but they encouraged him that he had a good mind. Nevertheless, Eley quit school in the ninth grade, then entered the Job Corps at age seventeen and learned how to be a welder. While in the Job Corps, Eley would send money home to his family and, in one instance, gave his mother $100 to finish payments for her nursing education.

{¶ 84} Eley's mother and sister both conceded that Eley had problems with alcohol and drugs, but maintained that "you wouldn't want to meet a better person" when he wasn't abusing these substances. Eley's sister described him as normally a "quiet, sweet, gentle person that wouldn't hurt anybody." Eley's brother-in-law stated that Eley was kind and concerned with his children, especially with the one who has a learning disability. Eley's mother stated that all his siblings love him, and that Eley was "church oriented" growing up, and is now "born again." Eley's

unsworn statement, consisting mostly of Bible verses, seems to support this assertion. However, Eley had served time in prison for shooting a man in the legs, and for breaking and entering.

{¶ 85} Dr. Douglas Darnall testified that Eley was of borderline intelligence, but could comprehend most material he would encounter day-to-day and is literate. Darnall stated that Eley has a chronic history of both alcohol and polysubstance abuse, but found "no evidence of psychosis or major defective disorder." Eley understands the difference between right and wrong, but has a history of impulsivity. Darnall found Eley to be remorseful, but not about the victim of his crime. However, two of the police detectives present when Eley confessed testified that Eley appeared to be remorseful and sorrowful for murdering Aydah.

{¶ 86} We find none of the first six statutory mitigating factors in R.C. 2929.04(B) to be relevant. However, several aspects of factor (7), the catchall factor, deserve some weight in mitigation. Eley's longstanding, consistent devotion and care for his family deserve some weight. See *State v. Lawrence* (1989), 44 Ohio St.3d 24, 33, 541 N.E.2d 451, 460. While the testimony was conflicting, Eley had shown remorse, which is worthy of some weight in mitigation. See *State v. Landrum* (1990), 53 Ohio St.3d 107, 125, 559 N.E.2d 710, 730.

{¶ 87} Based upon the foregoing, we conclude that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt. Eley confessed to the crimes of aggravated murder and aggravated robbery against Ihsan Aydah, and his actions merit the capital penalty to which he was sentenced.

{¶ 88} Eley's death sentence is both appropriate and proportionate when compared with similar cases of murder combined with aggravated robbery. See *Green, supra,* 66 Ohio St.3d 141, 609 N.E.2d 1253; *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576; *Clark, supra*, 38 Ohio St.3d 252, 527 N.E.2d 884; and *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55.

**{¶ 89}** For all of the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

––––––––––––––––––