[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant/Appellant, Demetrius Winn, appeals from his conviction and sentence of three years in prison for possession of five to ten grams of crack cocaine. Winn's arrest arose from the events of the evening of October 8, 1996. On that night, Detective Scarpelli of the Dayton Police Department was working on Operation Overlord, in which the streets were flooded with detectives to bolster the normal street patrols. On that night, Scarpelli saw Winn and three other men at a Sohio station, getting gas for a red and beige Suburban. Scarpelli was familiar with Winn because Winn was a primary suspect in a narcotics investigation in which Scarpelli was involved. Scarepelli and another narcotics detective had been told by a confidential informant that Winn carried drugs, weapons, or money when he drove the red Suburban. Scarpelli also believed the police had a outstanding warrant for Winn's arrest on an assault charge.
Some dispute exists about whether Winn was, in fact, driving the Suburban that evening. In any event, because Scarpelli was in plainclothes and was driving an unmarked cruiser, Scarpelli called for a uniformed crew to help make the stop. The basis for the stop was the outstanding warrant. Shortly after Scarpelli called for help, a police cruiser fell in behind the Suburban and turned on its lights. At that point, the vehicle fled and eventually ended up on Interstate 75. During the chase, the police saw something thrown from the vehicle and later recovered a gun and some cocaine from that location.
The police apparently lost the Suburban during the chase. However, when the Suburban tried to exit from the interstate onto Dryden Road, it went off the road and landed in a ravine. The four men riding inside the vehicle were either thrown out during the accident or left the vehicle afterward. However, at least three of them were found when the police arrived on the scene. Winn was found, alone, on the opposite side of Dryden Road, and appeared to be unconscious. According to Winn, he was not really unconscious, but was pretending because he was afraid of what the police might do. Winn claimed to have heard threatening comments by the police at the scene. Winn testified that he was handcuffed at the scene and that the handcuffs were removed when he was transported to the hospital. By contrast, the police denied handcuffing Winn at any time. Instead, Winn was taken to Miami Valley Hospital by Care Flight, and was not handcuffed. Further, no police personnel rode on the helicopter with Winn.
When a patient is brought to Miami Valley Hospital either by helicopter or by the life squad, a level one trauma exists and a trauma team responds. On this particular night, Dr. Hartson, an orthopedic surgery resident, was a member of the trauma team. Dr. Hartson performed a physical exam of Winn and decided that a rectal exam should be done, for two reasons. First, Dr. Hartson needed to rule out a medical emergency like internal bleeding. Second, Dr. Hartson was concerned about a spinal cord injury because Winn was holding his legs in a stiffened position. Before examining Winn, Dr. Hartson did not obtain verbal or written consent for either a physical examination or for the rectal exam. He explained that in emergency trauma situations, the hospital does not obtain consent for physical examinations during the initial evaluation.
No police were present during the exam, nor had Dr. Hartson had any contact with police officers before the exam. During the rectal exam, Dr. Hartson found something in Winn's rectum and removed it. He then turned over what appeared to be a bag of contraband to the hospital's security officer. There is some dispute about whether the security officer was already present in the room or had to be called. According to Dr.Hartson, the security officer was present when the bag was removed. However, the security officer testified that he was summoned to the emergency room cubicle and, upon arriving, was handed what appeared to be a bag of alleged contraband. The security officer then filled out a chain of custody form and called the Dayton Police Department to report what Dr. Hartson had found.
Subsequently, after Winn was moved to a private room, the police interviewed Winn. Very little evidence was presented about this discussion. Winn was apparently not given any Miranda
warnings. However, the only questions Winn recalled being asked were whether he drove the car, and whether he could tell the police who the other people in the car were.
Winn was then indicted for possession of crack cocaine and for willfully eluding or fleeing a police officer. Before trial, Winn moved to suppress all evidence and statements, and the facts referred to above were elicited at the suppression hearing. Following the hearing, the trial court denied the motion to suppress, finding first that the exclusionary rule did not apply to the rectal exam because no state action was involved. Second, the court said it found no reason to believe that the interview in Winn's hospital room occurred while Winn was in custody or was deprived of freedom in any significant way. After the suppression decision, Winn pled no contest on March 11, 1998, to possession of cocaine, and the remaining charge was dismissed by the State. On April 28, 1998, Winn was sentenced to three years in prison. Winn then retained new counsel, who filed a motion to withdraw Winn's guilty plea on May 5, 1998. A notice of appeal was also filed on May 8, 1998. The record does not indicate that the trial court ever ruled on the motion to withdraw.
On appeal, Winn raises the following assignments of error (recited verbatim):
 I. The trial court erred in overruling the defendant-appellant's motion to suppress by failing to specify its reasons supporting its decision against suppression of possible statements taken in violation of Defendant's constitutionally protected Fifth Amendment rights.
 II. The trial court committed reversible error in failing to even consider Defendant's Criminal Rule 32.1 Motion to Withdraw his No Contest Plea and further committed reversible error in failing to give the Defendant a Hearing on the Motion as requested.
After considering both assignments of error, we find them without merit and affirm the judgment of the trial court. A brief explanation of our reasons follows.
 I
As a preliminary point, we note that the trial court's decision on suppression covered two issues: 1) whether the cocaine found as a result of the rectal exam at Miami Valley Hospital should be suppressed because Winn did not consent to the exam; and 2) whether statements Winn made to the police prior to any Miranda
warnings should be suppressed. As we mentioned earlier, the trial court found against Winn on both issues. On appeal, Winn has not raised any error related to the first issue, so we do not consider that matter. Concerning the second issue, Winn contends that the trial court erred in failing to give a sufficient explanation of its basis for denying suppression of statements made during the hospital interview.
In this context, the trial court did not refer to any specific facts, but simply said that "[b]ased upon the evidence elicited at the hearing, there is nothing which leads the Court to believe that the interview in the hospital room and the statements made therein were done while the Defendant was in custody or otherwise deprived of his freedom in any significant way." Winn claims this is insufficient and that the court must set out essential findings of fact for the court of appeals to review. In response, the State says the suppression of statements is moot, since none of the statements related to the charge for which Winn was found guilty. Alternatively, the State argues that the trial court did make factual findings that sufficiently supported the court's "in custody" conclusion. Furthermore, while the facts were not specifically assigned to one issue or another, the State claims there is no need to do so because suppression decisions have no set format.
Crim.R. 12(E) states that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." However, the Ohio Supreme Court has held that "`[I]n order to invoke the rule, the defendant must request that the court state its essential findings of fact in support of its denial of a motion.'" State v. Eley (1996),77 Ohio St.3d 174, 179 (citations omitted). Moreover, a failure to invoke the rule waives any error. Id.
In the present case, Winn failed to invoke Crim.R. 12(E) in the original motion to suppress, in an amended motion to suppress, or at the suppression hearing. Accordingly, Winn has waived any error. However, even if Crim.R. 12(E) had been properly invoked, the trial court did state its essential findings in a sufficiently specific manner. First of all, the suppression decision contained a lengthy section labeled "Facts," which we can only assume was intended to represent the court's factual findings. Second, within the "Facts" section, the court mentioned a number of facts from which one could conclude that Winn was not "in custody" as we have interpreted that term.
Regarding "in custody" determinations, we noted in State v.Estepp (Nov. 26, 1997), Montgomery App. No. 16279, unreported, that "we accord traditional deference to the trial court's factual findings, particularly where witness credibility is concerned, * * * [but] must also independently decide if the facts as found indicate that the defendant was "in custody" under the controlling legal standard." Id. at p. 3. The controlling legal standard in this context is "how a reasonable man in the suspect's position would have understood his situation." State v. Biros (1997),78 Ohio St.3d 426, 440. However, "neither an officer's subjective intent nor the defendant's subjective belief is relevant to this analysis." Estepp, p. 4 (citations omitted).
In Estepp, we used several factors to evaluate how a "reasonable person in the defendant's situation would have understood the situation," including: 1) the location where the questioning took place; 2) whether the defendant was a suspect when the interview began; 3) Any restrictions on the defendant's freedom to leave; 4) whether the defendant was handcuffed or was told he was under arrest; 5) whether threats were made during the interrogation; 6) whether the defendant was physically intimidated during the interrogation; 7) whether the police verbally dominated the interrogation; 8) the defendant's purpose for being at the location of the questioning; 9) whether neutral parties were present at any point during the questioning; and 10) whether police took any action to overpower, trick, or coerce the defendant into making a statement.
In the present case, the defense put on limited evidence about the interview in the hospital. The facts we do know indicate that Winn was definitely a suspect, since alleged contraband had already been found by the time he was interviewed. Additionally, the police appeared to have believed from the beginning that Winn was the driver of the Suburban and was involved in criminal activity. Winn also testified that an officer threatened him, but the only specific comment about a threat was Winn's statement that the officer "got in his face" during the interview and told him that someone else was going to talk to him. In contrast, the remaining factors weigh against finding a reasonable belief on Winn's part that he was in custody. Specifically, Winn was in a hospital, not a police station, and he was at the hospital for treatment, not for questioning. Winn was not handcuffed, nor was his freedom restrained in any way. Additionally, in view of the fact that the police simply asked if Winn was driving and the identify of the other parties in the car, we find no evidence of verbal intimidation or of any actions taken to trick Winn or coerce a statement.
After evaluating the above factors, we agree with the trial court that a reasonable person in Winn's situation would not have believed he was in custody. Accordingly, we also agree that noMiranda warnings were required.
Based on the preceding discussion, the first assignment or error is without merit and is overruled.
 II
In the second assignment of error, Winn contends that the trial court erred in failing to rule on Winn's Crim.R. 32.1 motion to withdraw the no contest plea. The motion was based on allegations of inaccurate representations by Winn's former trial counsel. Supposedly, Winn was told that if he pled guilty, he would be eligible for community control sanctions, when, in fact, he was ineligible. According to Winn, trial counsel also told him that even if he were sentenced, he would not be incarcerated during the pendency of his appeal.
As we noted above, the record does not indicate that the trial court ruled on the motion, which was filed after the plea and shortly before the notice of appeal was filed. The State takes the position that the filing of the notice of appeal divested the trial court of jurisdiction. We agree with the State.
Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Although the rule does not specify a time limit for filing the motion, we have previously held that the filing of a notice of appeal divests the trial court of jurisdiction to consider a motion to withdraw a plea. See, State v. Haley (July 7, 1995), Greene App. Nos. 94-CA-89, 94-CA-108, and 94-CA-109, unreported. This is consistent with the general rule that after appeal, trial courts retain jurisdiction over issues "not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issues like contempt, appointment of a receiver and injunction."State ex rel. Special Prosecutors v. Judges, Court of CommonPleas (1978), 55 Ohio St.2d 94, 97 (citation omitted). A motion to withdraw a plea is not a collateral issue, because it potentially directly impacts an appeal. Accordingly, the trial court in this case did not have jurisdiction over the motion to withdraw the plea once the notice of appeal was filed, and the court did not err in failing to rule on the motion.
In light of the above discussion, the second assignment of error is without merit and is overruled.
Having found Defendant's assignments of error without merit, we affirm the judgment of the trial court.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
George A. Katchmer
Cornelius "Carl" Lewis
Hon. David Sunderland