OPINION
John M. Miller is appealing a judgment of the Montgomery County Court of Common Pleas convicting him of gross sexual imposition and sentencing him to three years incarceration.
Miller was indicted by the Montgomery County Grand Jury for one count of rape of a minor under thirteen years of age. The indictment was amended on October 7, 1999, to indicate the charge of gross sexual imposition of a minor less than thirteen years of age, in violation of R.C. 2907.05(A)(4). A jury trial was held on the matter on February 10, 2000, however the trial court declared a mistrial after the jury failed to reach a verdict. A second trial commenced on April 26, 2000. This time, the jury found Miller guilty of the gross sexual imposition charge.
At trial, it was determined that the minor had lived in a foster home since she was seven months old. Over the years, the minor's foster mother, whom we will refer to as "B.D.," had maintained regular visitation between the minor and her family, which included Miller. In September of 1998, the minor's grandmother, whom we will refer to as "S.A.," picked her up from B.D.'s for a weekend visitation. S.A. and the minor drove to the job center where Miller was looking for employment. This was the first visitation Miller had with the minor after being "absent" for two years at "school." S.A., Miller, and the minor proceeded to S.A.'s house, then they went to dinner and rented a movie from Blockbuster Video.
Back at S.A.'s house, the minor and Miller watched the movie "Spice World." At some point, Miller took the minor into the basement to try on some clothes. He gave her a pair of crotchless panties and a pair of thong panties. He explained to the minor that they were "princess underwear." Shortly thereafter, the minor told Miller that the underwear were uncomfortable, and Miller allowed her to change back into her pajamas.
That night, the minor slept on a foldout chair in the living room, and Miller slept on a couch. At some point, the minor awoke and saw Miller walk toward her. He picked her up and placed her on top of him, so that their stomachs touched. Miller placed his hands under her underpants, fondling the minor on the outside and inside of her vagina. The minor stated that Miller's touching had hurt and had made her feel "scared." The minor, who pretended to be asleep, "budged" as if she was waking up, and at that time Miller stopped and returned to the couch.
The next morning, the minor did not tell anyone what had happened because she was "scared" and felt uncomfortable about the situation. Later that day, the minor and Miller went to a birthday party at Miller's brother's (whom we will refer to as "J.") house. Miller and the minor slept at J.'s house on a foldout couch in the basement. The minor awoke during the middle of the night to see Miller watching a pornographic movie. The minor closed her eyes, Miller gave her a hug, and she went back to sleep.
Before returning the minor to B.D.'s, that next day Miller, S.A., and the minor attended the Montgomery County Fair. The minor testified that she later disclosed the incident to one of her friends, but that friend had moved away and nothing came of the disclosure.
On the morning of November 28, 1998, the victim asked her Sunday school class to pray for Miller for the "bad things" he had done to her. After class, the minor's Sunday school teacher talked with B.D. B.D. contacted Montgomery County Children's Services, and Detective Mark Bruns from the Huber Heights Police Department investigated the matter.
Det. Bruns interviewed the minor and B.D. The minor described the incident, and she drew a picture of the panties which Miller made her wear. Det. Bruns determined that the minor had no motive to lie, as there were no custody or visitation issues, and he noted that the minor had seemed sincere in her explanation of what had happened. Several days later, Det. Bruns visited Miller at S.A.'s house. When Det. Bruns explained to Miller the reason for the visit, Miller responded, "Oh, this can't be happening again."
Det. Bruns noticed that Miller had moved his hands around quite a bit during their conversation, and that he had seemed "nervous" and "upset." At one point, Miller responded "Well, you know, [the minor's foster father] is messing around with her also. And I think maybe she just might be confused." Det. Bruns informed Miller that he thought the minor had been sincere and truthful, but that he would give Miller the opportunity to tell his side of the story. Miller stated that he would be willing to speak with him, but he first wanted to know what the consequences of such would be. Det. Bruns explained that Miller could be charged with anything from felony rape to a misdemeanor. Miller then stated that there were "some things [he] want[ed] to get off [his] chest," so they moved into the kitchen for Det. Bruns to take notes.
After waiving his rights, Miller began explaining what had happened that day. When asked by Det. Bruns if he had placed his finger in the minor's vagina, Miller stated, "Well, I was wrestling around with her. And I might have done something that she didn't like." He further stated that anything he did to the minor was "not intentional" and was "probably an accident." Upon hearing S.A. arrive at the home, Miller abruptly stopped the interview, but he agreed to come to the police department later that week. He never contacted Det. Bruns.
S.A. testified on Miller's behalf. Her testimony closely followed that of the minor's in terms of the weekend's events. S.A. stated, however, that on the night in question Miller had slept upstairs, she had slept on the living room couch, the minor had slept on the foldout chair, and the minor's cousin had slept on the floor next to the minor. Miller's brother, whom we will refer to as "L.A.," stated that he had gone out for the evening the night in question, and upon returning home at 11 p.m., he had found S.A. on the living room couch watching television, the minor had been asleep on the foldout chair, and the minor's cousin had been asleep on the floor next to the minor.
The jury convicted Miller of gross sexual imposition, and he was sentenced to three years incarceration. Miller now appeals the trial court's judgment, asserting two assignments of error.
 I.
The jury verdict was against the manifest weight of the evidence.
We note that in weight of the evidence challenges, this court:
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, reconsideration denied (1997) 79 Ohio St.3d 1451, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. In a weight of the evidence challenge, we defer to the fact finder's decision as to which testimony to credit, and to what extent to do so. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. This standard allows us to "judge the credibility of opposing opinion testimony but not of fact testimony, unless it is so incredible that it defies belief." City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97-CA-110, unreported.
Miller first argues that his conviction was against the manifest weight of the evidence because the State had failed to prove that the offense occurred between September 1, 1998, and September 30, 1998. We note that "the state was not obligated to make specific proof of time as alleged, provided the offenses charged were established as having occurred within a reasonable time in relation to the dates fixed in the indictment." State v. Fowler (1985), 27 Ohio App.3d 149, 154, citing State v. Carey (1958),107 Ohio App. 149, 156, 8 O.O.2d 49.
In this case, Miller focuses on the minor's inability during cross-examination to provide the jury with an exact date and year during which the incident occurred. At trial, the minor testified that the incident occurred when she was ten years old, in September of 1998. Two days after the incident she attended the Montgomery County Fair with S.A. and Miller.
Several months later, the minor asked her Sunday school class to pray for the "bad things" that Miller had done.
To corroborate the minor's time frame, Det. Bruns testified that the incident had occurred between September 1, 1998, and September 30, 1998. He based this time frame upon the information he obtained during his interview with Miller. During the interview, Miller stated to Det. Bruns that the first time he had visited with the minor after his two-year absence was during Labor Day weekend of 1998, which would have been approximately September 4 — 7, 1998. Det. Bruns testified that this period of time had coincided with the Montgomery County Fair.
We note that Miller does not argue that the failure to narrow the time frame resulted in any prejudice to him. He does not claim that the failure to narrow the time frame created an inability to create an alibi defense, nor does he claim that he was unable to adequately defend his actions. To the contrary, Miller was still able to adequately respond to the allegations. S.A. and L.A. testified to their version of events on the weekend in question, and their testimonies corroborated the minor's testimony as to the basic series of events during that weekend. Based upon the above discussion, we find that the time frame provided to him was "reasonable" under Fowler, supra.
Moreover, we find that all other elements of the offense were proven beyond a reasonable doubt, and we overrule Miller's second argument, that his conviction was against the manifest weight of the evidence because the State failed to prove evidence of sexual contact between Miller and the minor.
Miller was convicted of gross sexual imposition in violation of R.C.2907.05(A)(4), which states that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Sexual contact is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
The minor testified that on the evening in question, Miller made her dress in crotchless panties and a thong. That night, Miller and the minor slept in the living room. While the minor was sleeping, Miller picked her up and placed her on top of him, put his hand inside her panties and fondled her. He rubbed his hand over her pubic area, rubbing in and outside of her vagina. Based upon her testimony, there was evidence of sexual contact, and all of the elements of gross sexual imposition were proven.
We acknowledge Miller's attempts to discredit the minor during trial. A great deal of Miller's cross-examination of the minor focused upon her inability to recall details or specific instances during the weekend surrounding the incident. Additionally, Miller's witnesses' testimonies contradicted the minor's version of events. S.A. stated that she had slept on the couch, Miller had slept upstairs, and the minor and her cousin had slept on the chair and on the floor. L.A. similarly stated that when he arrived home at 11 p.m. that night, S.A. was on the couch in the living room, and the minor and her cousin were asleep on the chair and on the floor.
It is clear from the conviction, however, that the jury believed the minor's version of the facts rather than Miller's witnesses. Questions of credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366. The jury had the opportunity to observe the witnesses and their demeanor on the stand. This court finds ample evidence in the record to support the jury's determination that the minor's testimony was more credible than Miller's witnesses' testimonies, and we will not interfere with that determination.
We find additional support for the verdict in Det. Bruns' testimony regarding his questioning of Miller. Det. Bruns stated that he had interviewed Miller at S.A.'s home. Upon his arrival at the home, Det. Bruns explained to Miller the reason and nature of his visit, to which Miller replied, "Oh, this can't be happening again." Det. Bruns noted that during their conversation, Miller had seemed "a little bit upset" and "nervous," and had said that he would be willing to talk to them, but he had inquired about the ramifications of doing such. However, when asked by Det. Bruns during the interview if he denied sticking his finger in the minor's vagina, Miller stated that they had been "wrestling" and that he "might have done something that she didn't like," but that it was not "intentional."
Therefore, after reviewing the record, weighing the evidence and considering the credibility of the witnesses, it is clear that the jury's finding of guilty on the charge of gross sexual imposition was not against the manifest weight of the evidence.
 II.
The Appellant was denied his Constitutional Right to a fair and impartial trial as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Section 10 Article 1 of the Ohio Constitution as the Prosecuting Attorney made reference that the Appellant did not deny the allegations during closing arguments.
Miller's assertion of prosecutorial misconduct stems from statements made by the prosecutor during closing arguments. In particular, Miller argues error in the prosecutor's comments referencing Det. Bruns' conversation with Miller. The prosecutor summarized Miller's responses to Det. Bruns' questions, which were somewhat incriminating, and she commented that Miller had not denied the allegations. Miller argues that the statements made by the prosecutor were so prejudicial that they justify overturning his conviction. We note that Miller failed to properly preserve this issue for appeal because he did not object to it during trial, and thus we must evaluate the comments from a plain error standpoint.
"The test for prosecutorial misconduct is whether the remarks are improper, and, if so, whether they prejudicially affected substantial rights of the accused." State v. Eley (1996), 77 Ohio St.3d 174, 187, certiorari denied (1996), 521 U.S. 1124, reconsideration denied (1997),77 Ohio St.3d 1549. The closing argument must be reviewed in its entirety to determine whether prejudicial error occurred. State v. Frazier (1995), 73 Ohio St.3d 323, 342, certiorari denied (1996),516 U.S. 1095. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219, certiorari denied (1984), 465 U.S. 1027. Because Miller's counsel failed to object to the statements, the alleged improprieties are waived, absent plain error. State v. Slagle (1992),65 Ohio St.3d 597, 604, certiorari denied (1993), 510 U.S. 833, reconsideration denied (1993), 66 Ohio St.3d 1414, certiorari denied (1996), 516 U.S. 1052. Accordingly, we review these allegations under the plain error standard.
Miller relies upon the following passage from State v. Thompson (1987), 33 Ohio St.3d 1, which states:
 Comments by prosecutors on the post-arrest silence or refusal to testify by defendants have always been looked upon with extreme disfavor because they raise an inference of guilt from a defendant's decision to remain silent. In effect, such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt.
Based upon this law, Miller argues that the prosecutor committed reversible error. We disagree.
We have reviewed the entire closing argument. Even if Miller had properly objected to the prosecutor's statements during closing, we would find that this is a valid subject for closing argument, and find that the statements do not constitute prosecutorial misconduct. Miller did not immediately exercise his right to be silent during his questioning by Det. Bruns. Instead, Miller made comments that were indicative of guilt. We find no error in the prosecutor's remarks which summarized Miller's statements to Det. Bruns, including Miller's failure to deny the allegations during questioning. These comments rebutted Miller's theory during trial that the minor falsely accused Miller, and did not constitute plain error.
Miller's second assignment of error is overruled.
 ______________________ FREDERICK N. YOUNG, J.
WOLFF, P.J. and FAIN, J., concur.