DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant William L. Kelly has appealed from his conviction in the Medina County Common Pleas Court of trafficking in drugs, a violation of Section 2925.03(A)(4) of the Ohio Revised Code, and aggravated trafficking in drugs, a violation of Section2925.03(A)(9) of the Ohio Revised Code. He has argued that: (1) the trial court incorrectly denied his motion to suppress the evidence against him because the searches that uncovered it were illegal; (2) the trial court incorrectly failed to dismiss his case although the statutory speedy trial period had run; (3) the prosecutor engaged in improprieties designed to inflame and mislead the jury, prejudicing his right to a fair trial; (4) the evidence was insufficient to convict him and the verdict was against the manifest weight of the evidence; (5) the trial court incorrectly allowed criminal profile evidence to reach the jury; (6) the trial court incorrectly excluded evidence on grounds that it was hearsay; (7) defendant was denied effective assistance of counsel; (8) the trial court incorrectly denied his motion for separate trials; (9) the trial court incorrectly refused to instruct the jury as requested by defendant; and (10) the trial court incorrectly sentenced defendant. This Court affirms the judgment of the trial court because: (1) defendant had no standing to object to the searches and, to the extent he objected to his seizure, which occurred at the same time as the searches, that seizure was not illegal; (2) the statutory speedy trial period had not run; (3) the prosecutor's remarks did not prejudice defendant; (4) the evidence was not insufficient and the verdict was not against the manifest weight of the evidence; (5) no criminal profile evidence was introduced at trial; (6) the trial court did not incorrectly exclude evidence because it was hearsay; (7) defendant was not denied effective assistance of counsel; (8) defendant was not entitled to a separate trial; (9) the trial court was not obligated to instruct the jury as defendant requested; and (10) the trial court did not abuse its discretion in sentencing defendant.
 I.
Defendant was arrested on May 26, 1996. On that day, Sunday of the Memorial Day weekend, Ohio Highway Patrol officers were stopping speeders on Interstate 271, three or four miles north of its intersection with Interstate 71. The officers on the ground were being assisted by an officer overhead in an airplane.
At approximately 1:45 p.m., a motorist driving south on Interstate 71 telephoned the Highway Patrol's Medina Post and reported that he was traveling behind a blue and white automobile that was swerving and that he believed its driver was intoxicated. The motorist stated that he had just passed the area at which the officers on the ground were watching for speeders.
The officer who was piloting the airplane began looking for the automobile the motorist had described and spotted it traveling in the left southbound lane on Interstate 71. As he watched, the automobile swerved from the left lane, completely across the right lane onto the berm, and part way off the berm onto the grass on the right side of the highway. It then came back into the right lane and continued southbound.
The pilot radioed Sergeant Bittner, one of the officers on the ground, and informed him of what he had observed. Sergeant Bittner was already southbound on Interstate 71 in an effort to overtake the blue and white automobile. He eventually did overtake it and carried out a traffic stop.
Trooper Farabaugh, another of the officers on the ground, arrived at the scene of the traffic stop immediately after the blue and white car pulled to the side of the road. As Sergeant Bittner approached the driver's side of the car, Trooper Farabaugh approached the passenger side. The officers noticed that there was a temporary New York license plate taped to the rear window of the car and that its interior was cluttered with "debris like from fast food restaurants, or coffee cups that were just laying around." The driver of the car was accompanied by two passengers, one of whom was defendant. It appeared that the occupants had been "riding in the car for some time."
The driver of the car identified himself as David Carpenter. Upon request, Mr. Carpenter gave Sergeant Bittner a temporary New York registration card for the car that, apparently, did not identify the car's owner. He also gave Sergeant Bittner his Arizona operator's license. He explained the weaving of the car by saying that he was tired, having driven from New York City that day on his way home to Arizona. Sergeant Bittner administered a field sobriety test to Mr. Carpenter and determined that he was not under the influence of alcohol or drugs. A computer check of his license indicated that it was suspended.
Sergeant Bittner had Mr. Carpenter sit in the back seat of his patrol car while he wrote him a citation for failing to drive within marked lanes. He did not cite Mr. Carpenter for driving under suspension because of a lack of confidence in the reliability of the information about his Arizona license.
While Sergeant Bittner spoke with Mr. Carpenter, Trooper Farabaugh spoke with the car's passengers, defendant and an individual named Nial Napier. They were very quiet while Trooper Farabaugh talked with them and answered his questions abruptly. During that conversation, Mr. Napier claimed that the car was owned by Mr. Carpenter.
Trooper Farabaugh joined Sergeant Bittner and Mr. Carpenter in the patrol car as Sergeant Bittner was completing the issuance of the citation to Mr. Carpenter. Trooper Farabaugh asked Mr. Carpenter if the car he had been driving contained any "large sums of money, drugs or weapons[.]" Mr. Carpenter "immediately answered no, his posture seemed to straighten up, his voice became louder, talking faster, that type of thing, became more animated." At approximately that time, Sergeant Bittner completed writing the citation. He informed Mr. Carpenter about the procedure for mailing in the fine. After he issued the citation, he told Mr. Carpenter that he was free to go, and then asked whether, before he went, he would mind if the officers searched his car. Mr. Carpenter responded that it was not his car, but, if it were, he would not allow them to search it. At that time, Trooper Farabaugh asked whose vehicle it was, and Mr. Carpenter responded that it was Mr. Napier's.
Trooper Farabaugh is a member of the Highway Patrol's drug interdiction unit, and he had a drug sniffing dog in his patrol car. Based, in part, upon the conflicting statements by Mr. Carpenter and Mr. Napier regarding ownership of the car, he decided to take his dog around the car to determine whether it would alert, thereby indicating a presence of drugs. As he took the dog around the car, it jumped through the open driver's window and alerted on the front seat and ashtray.
By this time, another officer, Trooper Witmer, had arrived at the scene, and he and Trooper Farabaugh conducted a quick search of the interior of the car. Either during this search, or during a later search at the Medina Highway Patrol Post, "both marijuana seeds and marijuana residue [were found] in the ashtray."
The officers attempted to open the trunk, but it was locked, and defendant and his companions claimed not to have a key. Defendant told the officers that some of his clothes were in the trunk and that he had previously gained access to it through use of a release button inside the glove box. When that button was pushed, however, the trunk did not open.
Believing that they had probable cause to search the trunk, and having no other way to enter it, the officers towed the vehicle to the Medina Highway Patrol Post, where they could, if necessary, employ a locksmith to open the trunk. At the patrol post, the officers conducted another search. This time, they discovered a small container of marijuana under the back seat. Defendant admitted that the container was his. He and his companions were then placed under arrest.
Following the arrest, Trooper Farabaugh once more took the drug dog around the car. This time, the dog alerted on the trunk. The officers again inspected the trunk release button in the glove box, then removed the glove box. They discovered that a wire running to the trunk was disconnected. After reconnecting it, the release mechanism worked and the trunk opened.
The officers searched the trunk and found approximately $75,000 cash, most of which was wrapped in a sleeping bag, a loaded semi-automatic handgun, a brick of marijuana wrapped in cellophane, and a small digital scale. Because of the holiday weekend, rather than having the car immediately towed to a storage yard, the officers secured it in the post garage. Two days later, during an inventory search in preparation for turning the car over to a tow truck operator, Trooper Witmer discovered several sheets of paper soaked in LSD under the carpet in the trunk. The sheets contained approximately 20,000 doses of LSD. On June 4, 1996, defendant and his companions were indicted for trafficking in drugs, a violation of Section 2925.03(A)(4) of the Ohio Revised Code, and aggravated trafficking in drugs, a violation of Section2925.03(A)(9) of the Ohio Revised Code.
On August 2, 1996, defendant moved for suppression of the evidence found in the searches of the car. The trial court held a hearing commencing on September 23, 1996, with a second day of testimony on November 12, 1996. On December 31, 1996, the trial court denied defendant's motion to suppress, and defendant and his companions were tried before a jury commencing January 14, 1997.
At trial, defendant admitted that the small container of marijuana found under the back seat of the automobile was his. He denied having knowledge, however, of the marijuana and LSD found in the trunk. On January 17, 1997, the jury found defendant guilty of both charges against him. He timely appealed to this Court.
 II. A.
Defendant's first assignment of error is that the trial court incorrectly denied his motion to suppress evidence found during the searches of the car. He has conceded that the initial stop of the car was appropriate. He has argued, however, that the officers violated his Fourth Amendment rights by seizing him while Trooper Farabaugh conducted the dog sniff of the car and, further, by conducting warrantless searches of the car.
To the extent defendant has complained about the warrantless searches of the car, those searches were not violative of hisFourth Amendment rights. Regardless of whether those searches may have been a violation of the Fourth Amendment rights of Mr. Carpenter (the driver of the car) or Mr. Napier (the owner of the car), they were not a violation of the Fourth Amendment rights of defendant, who was simply a passenger in the car:
 A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.
Rakas v. Illinois (1978), 439 U.S. 128, 134, 58 L.Ed.2d 387, 395. In order to show that his Fourth Amendment rights were violated, defendant would have had to demonstrate that the searches infringed upon his legitimate expectation of privacy. A person's "capacity to claim the protection of the Fourth Amendment depends * * * upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Id. at 143, 58 L.Ed.2d at 401.
The drugs upon which defendant's convictions were based were found in the trunk of the car. The only connection between defendant and the trunk was that defendant was a passenger in the car and had some of his clothes in the trunk. Defendant did not have exclusive control of the trunk. Nor, apparently, did he have a key to it, or any other way of accessing it. His status as a passenger in the car with the owner's permission was not sufficient to demonstrate a legitimate expectation of privacy in the trunk. Id. at 148, 58 L.Ed.2d at 404.
Defendant has argued that, even if he did not have a reasonable expectation of privacy in the trunk, the evidence against him should have been suppressed because that evidence would not have been discovered if he and his companions had not been illegally seized. He has pointed out that Sergeant Bittner had finished issuing Mr. Carpenter the traffic citation before Trooper Farabaugh had his dog sniff the car. At the time of the dog sniff, however, the officers had sufficient reasonable articulable suspicion to seize defendant long enough to conduct the dog sniff. See Terry v. Ohio (1968), 392 U.S. 1,20 L.Ed.2d 889. By that time, Trooper Farabaugh had observed that defendant and Mr. Napier were being very quiet and abruptly answering questions put to them. He testified at the suppression hearing that neither of them asked him why they had been stopped, which he considered unusual. Further, he had observed that Mr. Carpenter's posture changed and that he became more animated when he was asked about large sums of money, drugs, or weapons. Finally, Mr. Napier claimed that Mr. Carpenter was the owner of the car, while Mr. Carpenter claimed that Mr. Napier was the owner of the car. These factors established sufficient reasonable articulable suspicion to permit the officers to seize defendant and his companions for the time it took Trooper Farabaugh to get the drug dog from his cruiser and walk it around the car. Once the dog alerted on the car, the officers had probable cause to believe that it contained drugs. State v. Carlson (1995), 102 Ohio App.3d 585, 600. Defendant's first assignment of error is overruled.
 B.
Defendant's second assignment of error is that the trial court incorrectly failed to dismiss his case although the statutory speedy trial period had run. He has argued that the month between the first and second day of his suppression hearing, as well as the nearly two months between the last day of that suppression hearing and the trial court's decision to deny his motion to suppress, should have been included for purposes of computing the speedy trial time period.
Pursuant to Section 2945.71(C)(2) of the Ohio Revised Code, a person charged with a felony must be brought to trial within 270 days after his arrest. Section 2945.71(E) provides that, in calculating the number of days elapsed for speedy trial purposes, each day an accused is incarcerated shall count as three days. Defendant was held in jail from the time of his arrest until his trial. The State, therefore, had 90 days to bring him to trial.
Section 2945.72(E) tolls the running of the statutory speedy trial time for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." Furthermore, a trial court may take a reasonable amount of time to decide a motion filed by a defendant, such as a motion to suppress, and such time will not count for purposes of computing the statutory speedy trial time period. See, e.g., In re Jackson (1988), 36 Ohio St.3d 189, 190; State v.Arrizola (1992), 79 Ohio App.3d 72, 75.
Defendant was arrested on May 26, 1996. Sixty-four days later, on July 29, 1996, he moved to suppress the evidence against him. A hearing was held on defendant's motion, along with similar motions filed by Mr. Carpenter and Mr. Napier, on September 23, 1996. Testimony was not completed that day, and it was necessary for the court to schedule a second day convenient for all the parties. The second day of testimony occurred on November 12, 1996. In view of the number of parties involved, the delay between September 23, 1996, and November 12, 1996, was not unreasonable.
At the conclusion of the hearing, on November 12, 1996, the trial court allowed each defendant two weeks to submit a brief and allowed the State two weeks beyond that to do the same. It denied defendant's motion to suppress on December 31, 1996. The period between the State's submission of its brief and the trial court's ruling on defendant's motion was not unreasonable.
Defendant has argued that the time between the first day of the hearing on September 23, 1996, and the second day of the hearing on November 12, 1996, should be counted against the State because the trial court failed to record the continuance, failed to give a reason for the continuance, and failed to identify the party against whom the continuance was charged. According to defendant, a journal entry containing those matters was necessary to toll the statutory time period. This Court has previously held, however, that, "[w]hen the record indicates that a continuance was attributable to the defendant, then such delay will be assessed to him even in the absence of a court's journal entry." State v. Bumbalough (1992), 81 Ohio App.3d 408, 410. Defendant moved to suppress the evidence against him and specifically requested a hearing on that motion. The trial court was unable to conclude the testimony of all of the witnesses on the first day of the hearing, September 23, 1996, so a second day was necessary. As written above, in view of the number of parties involved, the delay from September 23, 1996, to November 12, 1996, was not unreasonable.
Defendant's trial commenced on January 14, 1997, fourteen days after his motion to suppress was denied. The speedy trial time period was tolled between the filing of his motion to suppress on July 29, 1996, and the trial court's denial of that motion on December 31, 1996. Accordingly, for speedy trial purposes, defendant was brought to trial in seventy-eight days (the sixty-four days between his arrest and the filing of his motion to suppress plus the fourteen days between the trial court's ruling on his motion to suppress and the commencement of trial). Defendant's second assignment of error is overruled.
 C.
Defendant's third assignment of error is that the prosecutor engaged in improprieties designed to inflame and mislead the jury, prejudicing his right to a fair trial. The test for prosecutorial misconduct is whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the accused. State v. Eley (1996), 77 Ohio St.3d 174, 187, citing State v. Smith (1984), 14 Ohio St.3d 13, 14.
First, defendant has argued that the prosecutor, during his opening statement, improperly said that the troopers had probable cause to search the car, that the officers had never before encountered such a large amount of LSD, and that Arizona was considered a drug source state. For each of these statements, after an objection was made, the trial court either prevented the prosecutor from continuing with the comment or struck the remark and instructed the jury to disregard it. Furthermore, the trial court told the jury several times that opening statements and closing arguments are not evidence. Defendant was not prejudiced as a result. See State v. Garner (1995), 74 Ohio St.3d 49, 59 (a jury is presumed to follow a judge's instructions).
Defendant has further argued that the prosecutor improperly commented on Mr. Carpenter's refusal to consent to a search of the car. This remark concerned Mr. Carpenter, not defendant. Defendant, therefore, was not prejudiced by it.
Defendant has also argued that the prosecutor improperly elicited testimony from the officers that the county prosecutor had authorized them to conduct a warrantless search of the car. An objection to that testimony, however, was sustained. The trial court, therefore, prevented any prejudicial testimony.
Defendant has further argued that the prosecutor improperly exceeded the scope of defendant's direct examination during the State's cross examination. Pursuant to Rule 611(B) of the Ohio Rules of Evidence, cross examination is "permitted on all relevant matters and matters affecting credibility." The prosecutor did not improperly question defendant.
Finally, defendant has argued that the prosecutor improperly called him a "bold faced liar" during his closing argument. The State has argued that the evidence showed that, in this specific case, defendant was not telling the truth. Such a remark, viewed in the entirety of this case, was neither improper nor prejudicial to defendant. See State v. Hill (1996), 75 Ohio St.3d 195, 204. Defendant's third assignment of error is overruled.
 D.
Defendant's fourth assignment of error is that the evidence was insufficient to convict him and the verdict was against the manifest weight of the evidence. He has argued that the evidence did not show that he had actual or constructive possession of the drugs found in the trunk.
To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. To determine whether a conviction is against the manifest weight of the evidence:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340; see, also,State v. Thompkins (1977), 78 Ohio St.3d 380, 387.
Defendant was convicted of trafficking and aggravated trafficking in drugs. In order to prove trafficking, the State was required to show that defendant knowingly possessed in excess of bulk amount of marijuana; in order to prove aggravated trafficking, the State was required to show that defendant knowingly possessed in excess of one hundred times bulk amount of LSD. Section 2925.03(A)(4) and (A)(9) of the Ohio Revised Code. Possession may be actual or constructive. State v. McShan (1991),77 Ohio App.3d 781, 783. Constructive possession is demonstrated if the drugs are in the defendant's dominion or control. Id.;State v. Wolery (1976), 46 Ohio St.2d 316, 332.
In this case, defendant was a passenger in a car traveling from New York City to Arizona. He claimed that the driver of the car, Mr. Carpenter, a man he knew only through Mr. Carpenter's son, had asked him to go along to New York City and that he had only done so in order to see the city. Marijuana and LSD were found in the trunk of the car. The trunk was locked and defendant and his companions asserted that no key existed. The trunk release in the glove box was disconnected. Yet, defendant told one of the officers at the scene that he had some articles of clothing in the trunk. The jury could have found that defendant had access to and knowledge of the other items in the trunk, including the marijuana and LSD. Viewing the evidence in a light most favorable to the prosecution, this Court cannot conclude that the jury's verdict was not supported by sufficient evidence. A rational trier of fact could have found that defendant was part of a scheme to transport a large amount of marijuana and LSD across country and that defendant had access to and knowingly possessed those drugs. In addition, upon independently weighing the evidence and credibility of the witnesses, this Court cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that defendant's conviction must be reversed and a new trial ordered. Defendant's fourth assignment of error is overruled.
 E.
Defendant's fifth assignment of error is that the trial court incorrectly allowed criminal profile evidence to reach the jury. He has argued that the State introduced testimony that defendant fit a "profile" of a drug courier — that he was riding in an old car, that he was traveling between New York and Arizona, known source states for drugs, and that the car looked "lived-in," with fastfood wrappers strewn about the interior. He has concluded that such profile evidence stereotyped him and contributed to his conviction.
The State did not, contrary to defendant's assertion, introduce evidence that defendant fit a drug-courier profile. Instead, the State presented evidence describing the car, such as its "lived-in" appearance, and the demeanor of the passengers. This evidence was observed by the officers at the scene. Further, defendant failed to object to this testimony at trial and, therefore, waived his right to assert it as error on appeal.
Defendant has also argued that the State explained its "source states" theory to the jury during opening statement, also stereotyping defendant. During its opening statement, the prosecutor said, "Arizona is a source state — [.]" An objection was raised and overruled, but the prosecutor did not continue to "explain" this theory. The prosecutor's isolated remark, even if error, did not prejudice defendant. Defendant's fifth assignment of error is overruled.
 F.
Defendant's sixth assignment of error is that the trial court incorrectly excluded evidence on grounds that it was hearsay. He has argued that the trial court should not have excluded certain testimony he sought to introduce on cross examination of Trooper Farabaugh. Specifically, he attempted to elicit testimony from Trooper Farabaugh that he (defendant) had denied knowledge of the existence of the drugs found in the trunk, that his fingerprints were not found on the drugs, that no contraband was recovered from his luggage, and that he admitted to possessing the small container of marijuana found under the back seat. He has asserted that such statements were non-hearsay admissions by a party opponent and, pursuant to Rule 801(D)(2) of the Ohio Rules of Evidence, were admissible.
Actually, the trial court permitted testimony that defendant denied knowledge of the existence of the drugs in the trunk, that his fingerprints were not found on the drugs, and that no contraband was recovered from his luggage. The trial court did not permit defendant to elicit testimony from trooper Farabaugh that defendant had admitted to possessing the marijuana in the small container. That testimony was correctly excluded by the trial court.
Pursuant to Rule 801(D)(2) of the Ohio Rules of Evidence, admissions by party opponents are not hearsay and are admissible. The rule requires, however, that the statement be offered against the party who made it. Defendant was attempting to introduce his own statement. It did not, therefore, qualify as admissible pursuant to Rule 801(D)(2). See In re Coy (1993), 67 Ohio St.3d 215,218 ("A party may not introduce his own statement under this rule"). Defendant's sixth assignment of error is overruled.
 G.
Defendant's seventh assignment of error is that he was denied effective assistance of counsel. He has argued that the decision to testify, which, he claims, was made by his counsel, unfairly prejudiced him because it focused attention on him and away from the other two defendants. There is nothing in the record that indicates that defendant did not wish to testify. The decision for him to take the stand and to admit that he owned the container of marijuana found under the back seat was a reasonable trial strategy that did not constitute ineffective assistance of counsel merely because it proved unsuccessful. See State v. Frazier
(1991), 61 Ohio St.3d 247, 255. Defendant's seventh assignment of error is overruled.
 H.
Defendant's eighth assignment of error is that the trial court incorrectly denied his motion for a separate trial. He has argued that his Sixth Amendment right of confrontation was violated because Trooper Farabaugh was allowed to testify that Mr. Carpenter called the marijuana in the trunk "our head smoke," implying ownership by all the defendants. Because Mr. Carpenter never took the stand, defendant was unable to cross examine him about that statement.
Rule 14 of the Ohio Rules of Criminal Procedure provides for separate trials if a joint trial would prejudice a defendant. An accused's right of cross examination secured by the Confrontation Clause of the Sixth Amendment to the United States Constitution is violated in a joint trial with a non-testifying co-defendant by the admission of extrajudicial statements made by the co-defendant inculpating the accused. State v. Moritz (1980),63 Ohio St.2d 150, paragraph one of the syllabus, following Bruton v.United States (1968), 391 U.S. 123, 20 L.Ed.2d 476. A violation of an accused's right to confrontation is not prejudicial, however, when there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt. Id. at paragraph two of the syllabus.
Sufficient independent evidence, apart from the statement by Mr. Carpenter, existed to convince the jury of defendant's guilt. Defendant was traveling across country in an older model automobile that looked as though he had been living in it. Marijuana was found wrapped in a sleeping bag and LSD was found under the carpet in the trunk. The trunk was locked and there appeared to be no way of opening it, as the trunk release button in the glove box was disconnected. Yet defendant admitted that he had clothing in the trunk. That admission arguably showed that he had access to the trunk and its contents. There existed sufficient independent evidence of defendant's guilt such that the jury could have convicted him. In the present case, Mr. Carpenter's statement was harmless beyond a reasonable doubt.
Defendant has also asserted that he and the other two defendants presented antagonistic defenses. Specifically, he has argued that both he and the State unsuccessfully tried to introduce a whispered conversation among the three defendants in which Mr. Carpenter and Mr. Napier attempted to convince him to admit that all of the drugs were his. The trial court was apparently willing to allow this conversation to be introduced, but, after a brief sidebar discussion, determined that defendant did not recall the conversation. As a result, the trial court excluded all mention of the conversation. No antagonistic defenses were presented, and defendant was not prejudiced. Defendant's eighth assignment of error is overruled.
 I.
Defendant's ninth assignment of error is that the trial court incorrectly refused to instruct the jury as he requested. He has argued that the trial court should have instructed the jury that, if it found that defendant possessed less than bulk amount of marijuana, it should acquit him of the trafficking in drugs charge.
In regard to the trafficking in drugs charge, the trial court instructed the jury:
 The elements of this charge that the State must prove beyond a reasonable doubt are as follows:
 1. That the defendant named in the indictment did knowingly
2. Possess marijuana, a Schedule I substance,
3. in an amount equal to or exceeding the bulk amount,
 4. on or about May 26, 1996, in the County of Medina, State of Ohio.
* * *
 Bulk amount is as follows: With regard to marijuana, 200 grams.
The trial court informed the jury of the law and instructed that, if they found that defendant knowingly possessed marijuana in an amount equal to or exceeding 200 grams, then they were to find him guilty of the trafficking in drugs charge. The trial court was not obligated to also instruct it that it must find defendant not guilty if it found that he possessed less than 200 grams. Defendant's ninth assignment of error is overruled.
 J.
Defendant's tenth assignment of error is that the trial court incorrectly sentenced him. His sentence included concurrent terms of eighteen months for trafficking in drugs and fifteen years to life for aggravated trafficking in drugs. Defendant has argued that the trial court failed to consider the sentencing criteria of Section 2929.12 of the Ohio Revised Code and, as a result, gave too harsh a sentence.
The felony sentencing criteria of Section 2929.12 and 2929.13
of the Ohio Revised Code "do not control the court's discretion" or "its sentencing decision." Rather, they provide guidance for the trial court in the exercise of its discretion in imposing a penalty permitted by statute. State v. Velez (1991), 72 Ohio App.3d 836,839. Defendant's sentence of eighteen months for the trafficking in drugs charge was within the trial court's discretion. In addition, his sentence of fifteen years to life for the aggravated trafficking in drugs charge was in accordance with Section 2925.03(C)(9) of the Ohio Revised Code. The trial court did not incorrectly sentence defendant. His tenth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Medina Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
QUILLIN, J., J. and BAIRD, J. CONCUR.