This timely appeals comes for consideration upon the record in the trial court and the parties' briefs. Appellant John Eley (hereinafter "Eley") appeals from the judgment of the Mahoning County Court of Common Pleas which 1) dismissed his petition for post-conviction relief 2) granted summary judgment in favor of Appellee State of Ohio (hereinafter "the State") and 3) denied his request for a hearing to determine his competency to proceed with collateral review. The issues before us are whether the court erred by granting summary judgment in favor of the State and by refusing to hold a competency hearing. For the following reasons, we affirm the decision of the trial court.
On August 26, 1986, Eley and Melvin Green (hereinafter "Green") went to the Sinjil Market to commit a robbery. Eley entered the store with a gun while Green waited outside. Eley robbed Ihsan Aydah, the attendant behind the counter, and shot him in the head. The victim later died from the gunshot wound. Soon after the robbery, Eley gave a statement to the police admitting he had robbed the store and shot the victim.
On September 26, 1986, Eley was indicted by the Mahoning County Grand Jury for the aggravated murder and aggravated robbery of Ihsan Aydah. Eley waived his right to a jury trial, and the case proceeded before a three judge panel, which convicted Eley of aggravated murder and aggravated robbery with both capital and firearm specifications. Following mitigation, the panel sentenced Eley to death, concluding the aggravating circumstances outweighed the mitigating factors. The conviction and sentence were later affirmed on direct appeal by this court in State v. Eley (December 20, 1995) Mahoning App. No. 87CA122, unreported, and by the Ohio Supreme Court in State v. Eley (1996),77 Ohio St.3d 174.
Thereafter, on September 20, 1996, Eley filed a petition for post-conviction relief pursuant to R.C. 2953.21. Eley filed a motion requesting the trial court order that his competency to assist counsel with his post-conviction petition be assessed, which the trial court denied after an evidentiary hearing. The State filed a motion for summary judgment which the trial court granted. Eley now appeals both the order denying competency evaluation and the judgment in favor of the State.
As a preliminary matter, we make note of a somewhat unusual filing in the present appeal. After both parties had filed their respective briefs and the matter was under consideration, counsel for Eley requested the appeal be placed on an expedited calender. Soon after, Eley, acting prose, and apparently without the knowledge of his attorney, filed a letter with this court waiving his right to any further appeals. As we were concerned by the implications of this waiver, we ordered both parties on September 21, 2001, to brief the issues raised by this waiver. In response, Eley revoked his waiver and requested that we proceed with his appeal, which was opposed by the State. We have discovered no case law which would prohibit Eley from revoking his prior waiver of all further challenges to his conviction and sentence. Accordingly, we shall proceed to address Eley's arguments.
For his first assignment of error, Eley argues:
 "The trial court erred in granting appellee's motion for summary judgment in violation of rule fifty-six of the Ohio Rules of Civil Procedure. State v. Milanovich (1975), 42 Ohio St.2d 46."
Within this assignment of error, Eley presents thirteen claims for relief which were summarily dismissed by the trial court. A grant of summary judgment disposes of a case as a matter of law. Therefore, we apply a de novo standard of review. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102.
Where a claim raised by a petition for post-conviction relief under R.C. 2953.21 is sufficient on its face to raise an issue that petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends on factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief. State v. Milanovich
(1975), 42 Ohio St.2d 46, paragraph one of the syllabus. A petitioner seeking post-conviction relief has the initial burden of providing evidence of sufficient operative facts to demonstrate a cognizable claim of a constitutional error. State v. Kappe (1983), 5 Ohio St.3d 36,37-38. However, "[u]pon a motion by the prosecuting attorney for summary judgment, a petition for post-conviction relief shall be dismissed where the pleadings, affidavits, files and other records show that there is no genuine issue as to any material fact, and there is no substantial constitutional issue established." Milanovich, supra, paragraph 2 of the syllabus.
 I. Claims Barred by Res Judicata
A defendant is barred by the doctrine of res judicata from raising any defense or constitutional claim that was or could have been raised at trial or on direct appeal from his conviction. State v. Perry (1967),10 Ohio St.2d 175. For the following reasons, Eley's second, third, fifth, sixth, eighth and tenth claims for relief are barred by the doctrine of res judicata.
Because an appeal from the judgment of conviction is limited to the trial court record, a petition for post-conviction relief may defeat theres judicata bar only if its claims are based upon evidence de hors the record. State v. Cole (1982), 2 Ohio St.3d 112 . Further, new evidence attached to the petition for post-conviction relief must meet "some threshold standard of cogency; otherwise it would be too easy to defeat the holding of Perry by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim [.]" State v. Lawson (1995), 103 Ohio App.3d 307, 315. Evidence de hors
the record must demonstrate these claims could not have been raised on direct appeal based upon the information in the original record. Id. The claim must rest upon factual allegations that cannot be determined by an examination of the files and records of the case. Milanovich, supra.
 A.
In his second claim for relief, Eley claims "neither a meaningful appellate review nor the constitutionally mandated proportionality review has occurred in this case as none of the previous courts have considered the companion case of Melvin Green, who was equally if not more culpable, and who was acquitted of the same crimes and charges."
The trial court properly rejected this argument, reasoning an inferior court has no jurisdictional basis to review the decisions and actions of an appellate court. A claim challenging appellate review of the imposition of the death penalty is not cognizable in a petition for post-conviction relief. State v. Powell (1993), 90 Ohio App.3d 260. Moreover, this claim is barred by res judicata as it has already been addressed by the Supreme Court of Ohio in Eley's direct appeal.
 B.
In his third claim for relief, Eley asserts death by electrocution violates the Eighth Amendment as being unduly cruel and unusual. In support of this proposition, Eley has attached to his petition voluminous materials which attempt to illustrate the asserted problems with execution. However, the Ohio Supreme Court has expressly held execution by electrocution is not cruel and unusual punishment. State v. Coleman
(1989), 45 Ohio St.3d 298. Further, this claim could have been brought on direct appeal and is subject to res judicata.
 C.
As his fifth claim for relief, Eley argues his sentence is void or voidable due to the mandatory nature of Ohio's death penalty statute. More specifically, Eley asserts this mandatory scheme prohibited the sentencer from considering whether death was really the appropriate punishment in each of the charges in his case, or of considering sympathy or mercy even if aggravating circumstances outweighed the mitigating circumstances. This claim is based solely upon evidence in the original trial record and is barred by res judicata, as it could have been raised in the direct appeal.
 D.
Eley alleges in his sixth claim for relief his conviction is void or voidable because R.C. 2929.03(D)(1) is unconstitutional. Eley argues this provision requires the findings of pre-sentence investigations to be furnished to the trial court, the jury, and the prosecutor, and "any
information learned about the Petitioner would be used against him at the mitigation phase of the proceedings." Eley asserts "he was prejudiced by the application of Ohio Revised Code Section 2929.04(D)(1) because it ultimately resulted in the prosecutor inserting his personal views on recommending the death sentence in addition to receiving information concerning Petitioner which, all of which in turn resulted in an unreliable death verdict." As this argument has already been raised and addressed on direct appeal, it is barred by res judicata.
 E.
Eley submits as his eighth claim for relief that, because the three judge panel failed to consider the mitigating factor of his good behavior and successful adjustment to prison life during his incarceration, his sentence is void or voidable.
The Ohio Supreme Court has recognized the ability to adjust to prison life is a mitigating factor that can be assigned weight. State v. Smith
(1997), 80 Ohio St.3d 89. The Ohio Supreme Court addressed this issue on direct appeal when conducting their independent review of this case, and specifically mentioned Eley's good behavior as a factor considered upon weighing the aggravating and mitigating factors. Eley,77 Ohio St.3d at 185. The Court concluded, "We find nothing in the nature and circumstances to be mitigating. Eley participated in a robbery where, under the circumstances, a murder was likely to occur." Id. at 189. Accordingly, this claim is also barred by res judicata.
 F.
Eley asserts as his tenth claim for relief, that "because his trial was held in a community where prejudicial influences were exerted by the Arab community, and counsel failed to move for a change of venue," he received "an unfair trial in a biased and/or prejudiced atmosphere created by the Arab community in Mahoning County, Ohio."
This assertion is contrary to the record in the direct appeal. Eley's counsel did in fact request a change of venue on two separate occasions, April 7, 1987 and April 14, 1987. Counsel simultaneously filed a Motion for Extensive Individual Voir Dire Examination on April 7, 1987, which was granted on April 14, 1987. Before either the voir dire could take place, or the Motion for Change of Venue could be ruled upon, Eley waived his right to a jury, opting instead for a three judge panel.
Assuming arguendo the trial court had ruled upon and denied the Motion for Change of Venue, this claim should have been pursued on direct appeal and is, therefore, barred by res judicata. Eley does offer some evidencede hors the record via an affidavit of a relative. However, this testimony is merely cumulative of evidence that was in existence at the time of the trial and could have been submitted at that time. Simply attaching exhibits containing facts outside of the record to a petition does not defeat the application of res judicata. The exhibits must show the petitioner could not have appealed his claim based upon the information in the original record. Lawson, supra.
Regardless, Eley was tried before a three judge panel, not a jury. It is well settled that judges are presumed in a bench trial to rely only upon relevant, material, and competent evidence. State v. Davis (1992),63 Ohio St.3d 44. Eley has offered no evidence to rebut the presumption that he was tried by an impartial panel. Consequently, Eley's tenth claim for relief is meritless as well.
 II. Claims of Ineffective Assistance of Counsel
Eley's fourth, ninth, eleventh, twelfth, and thirteenth claims for relief involve allegations of ineffective assistance of counsel. For the following reasons, these claims are meritless.
To prevail on a claim of ineffective assistance of counsel, a defendant must show there was a substantial violation of any of defense counsel's essential duties to his client, and, he was materially prejudiced by counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391,396-397. In addition, a defendant must show that counsel's representation fell below an objective standard for reasonableness and that counsel's errors were so serious that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the trial court would have been different. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674.
 A.
Eley bases his fourth claim for relief upon his "neurological impairment which results in his inability to make rational decisions and to assist his attorneys and aid in his defense." Moreover, he was prejudiced by the ineffective assistance of his trial counsel for their alleged failure to pursue a challenge of his competency.
On direct appeal, Eley argued the trial court should have conducted a competency hearing, since there was a bona fide doubt as to his competency. He claimed the trial court's failure to conduct such a hearing precluded the development of evidence which would have revealed sufficient indicia of incompetence.
The Ohio Supreme Court discredited this argument in Eley's direct appeal.
 "The record indicates that on December 29, 1986, Eley's counsel requested the appointment of a psychiatric expert and a competency hearing. The court ordered an examination and on February 4, 1987, set a competency hearing for February 10, 1987. On February 10, 1987, Dr. Douglas Darnell was appointed by the court to reexamine Eley. The competency hearing, however, was never held. Then, on May 11, 1987, Eley withdrew his plea of not guilty by reason of insanity and chose to proceed solely on a plea of not guilty. At that time, Eley filed a document acknowledging that he `knowingly and intelligently' withdrew `any challenge to his competency to proceed with the trial of this action'. Thus, Eley affirmatively waived his right to a competency hearing that he previously requested pursuant to R.C. 2945.37.
 "Even if we were to find Eley's waiver invalid, any error by the trial court would be harmless, since the record fails to reveal sufficient indicia of incompetence. * * * Other than mentioning a few aspects of his background that were brought out during the mitigation phase, Eley fails to cite any portion of the record which reveals any suggestion of incompetency." Eley, 77 Ohio St.3d at 183-184.
In response to Eley's assertions that his intellectual ability, alcoholism, and polysubstance abuse are mitigating factors to be considered by the sentencing panel, the Court found them to be of little consequence given the testimony of Dr. Darnall. The court remarked, "Darnall testified that Eley was literate, could function day to day, and was sane and competent at the time of the murder." Id. at 185. Darnall similarly found "no evidence of psychosis or major defective disorder."Id. at 189.
Although the preceding arguments relate solely to evidence found on the record, it makes it that much more difficult for Eley to support a claim that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064,80 L.Ed.2d at 692-693.
Eley contends there was sufficient evidence de hors the record,
including his uncooperativeness during competency evaluations, to mandate counsel's continued pursuit of his competency to stand trial, despite Eley's uncooperative behavior. Eley claims evidence was readily available if counsel had instigated even a nominal investigation to illustrate the need for a thorough evaluation and examination. Eley lists as examples his school records, his listless appearance while at school, ingestion of aspirin while at school, and his history of drug and alcohol abuse.
Most notably, Eley has attached to his petition as Exhibit #5 an affidavit from Dr. Smalldon, a psychologist trained in forensic clinical and neurological assessments. Dr. Smalldon explains that he did not have an opportunity to actually test Eley but suspects from the evidence presented to him that Eley may be suffering from brain damage.
It is very commonplace for defendants sentenced to death to raise this claim for relief at the post-conviction level. Consequently, many courts have dealt with similar fact patterns, and none have actually reversed a sentence based on this claim. In general, a trial counsel's failure to seek a competency evaluation or to pursue an insanity defense is not, perse, ineffective assistance of counsel. See State v. Decker (1986),28 Ohio St.3d 137.
The Fifth District, in State v. Wilkins (Aug. 5, 1996), Licking App. No. 95CA74, unreported., reasoned:
 "There are also several tactical reasons a defense attorney would not seek an evaluation based upon competency or sanity. First, requiring an evaluation may serve to give the prosecution unwanted insight into appellant's mental condition, thus assisting in the prosecution's cross-examination of her at trial. Second, an examination for either purpose would allow the state to use her statements to the examiner for impeachment purposes at trial. State v. Cooey (1989), 46 Ohio St.3d 20, paragraph two of the syllabus. Third, an insanity defense requires appellant to cast a reasonable doubt upon the accuracy of her statements to the police." Id. at 4.
In another death penalty case very similar to the present case, the defendant alleged his trial counsel was ineffective for failing to present evidence in mitigation that he suffered from a brain impairment at the time he committed the murder. State v. Fautenberry (Dec. 31, 1998), Hamilton App. No. C-971017, unreported. In Fautenberry, the record disclosed the defendant's attorneys did in fact arrange for a psychologist to conduct a neuro-psychological examination. The defendant refused to cooperate, then claimed that if he had been better advised, he would have cooperated.
The court remarked, "Clearly the gist of Fautenberry's argument is that his attorneys should have done a better job of overcoming his own recalcitrance, and that they should be held responsible for his personal failure to cooperate with Dr. Taney, whose services they obtained to aid in his defense." Id. at 3. The court, however, refused to impute Fautenberry's stubbornness to his attorneys, opining such evidence was "woefully deficient to overcome the strong presumption of reasonable assistance of counsel". Id. at 3.
In a case considered by the First District, the defendant claimed organic brain damage was not considered at trial due to the ineffective assistance of defense counsel. State v. Powell (1993), 90 Ohio App.3d 260. Quite distinct from the present case, Powell was diagnosed some four years after his sentencing as actually suffering from organic brain damage. The court nonetheless refused to accept this claim as meritorious, reasoning
 "The original trial record, rather than providing any benefit to Powell in this respect, actually serves to negate any triable claim to the extent that it reflects that defense counsel made reasonable efforts under the circumstances to obtain mitigating evidence for their indigent client by moving for and presenting vigorous argument in support of the appointment of expert assistance to explore the issue of brain damage." Id. at 265.
In the case at bar, Eley was in fact given the opportunity to be examined by a psychologist on May 18, 1987, who testified at the mitigation hearing that "[t]here was no evidence of psychosis or major defective disorder. Thus, he has good contact with reality." Moreover, after reading the suppression hearing transcript, at which Eley took the stand in his own defense, it appears he was capable of assisting counsel. He seemed very lucid and gave coherent, reasonable answers, even on cross-examination.
Incompetency is defined in Ohio as the defendant's inability to understand "* * * the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(A). Incompetency should not be equated with "mere mental or emotional instability or even with outright insanity." State v. Bock (1986), 28 Ohio St.3d 108, 110. In fact, "a defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." Id.
The only evidence presented by Eley that could possibly support his claim is the fact that he refused to cooperate and made seemingly poor decisions regarding his defense. For example, against his counsel's advice, he waived his right to a jury trial. Additionally, he refused to be reexamined by a psychologist and waived his challenge to his competency. However, this argument was rejected in Fautenberry. We do so as well here.
The Ohio Supreme Court found in State v. Berry (1997), 80 Ohio St.3d 371, that it was relevant whether a defendant is able to listen to and consider his attorney's opinion, but whether their opinion is right, wrong, or arguable is not relevant at all.
 "A competent person may choose to forgo even the strongest legal claim. Fn. 9. Cf. State v. Torrence
(1994), 317 S.C. 45, 47, 451
 S.E.2d 883, 884, fn. 2: `The test is not * * * whether the defendant in fact cooperates
 with counsel, but whether he has sufficient mental capacity to do so.'" Id. at 383.
Eley has attached as Exhibit 25 an affidavit from his trial attorney Thomas Zena, which expresses his frustration during his representation of Eley. Zena avers the prosecutor made offers to lessen Eley's sentence if he would testify against his accomplice Melvin Green, but Eley refused due to his religious beliefs. Attorney Zena continues "In hindsight I believe John wanted to go before a three judge panel due to his remorse for his accidental killing of the victim in an effort to get the trial over quicker. I still do not believe that John made a rational decision in waiving his right to a jury trial."
If anything, this affidavit bolsters the conclusion that Attorney Zena was not ineffective in assisting Eley. Attorney Zena describes everyone's efforts, including the prosecutor's, to talk Eley out of doing things that appeared to be harmful to his interests. Eley refused to cooperate, and as discussed above, a defendant's recalcitrance may not be imputed to his attorney. Consequently, Eley has failed to present sufficient evidence that his attorneys provided ineffective assistance with regard to his claim of incompetence. This claim is meritless.
 B.
For his ninth claim for relief, Eley asserts his conviction is void or voidable due to "numerous acts of deficient and ineffective assistance of counsel, and counsel's failure to object to incidents of misconduct by the prosecutor."
Eley first contends trial counsel was ineffective for failing to ensure that a complete record of all proceedings was maintained for future appellate review. Eley makes specific mention of counsel's failure to further pursue an overruled request for inspection of the grand jury transcripts. In addition, Eley claims counsel failed to ensure a complete record was made of the various plea offers made by the prosecutor.
Eley fails to establish why these claims could not have been brought on direct appeal. It is clear from the trial record that only one Motion to Inspect Grand Jury Proceedings was filed by counsel on April 7, 1987. If the failure to file a second motion rises to the level of ineffective assistance, this omission would be demonstrated by the record. Moreover, Eley offers no explanation as to how this failure prejudiced his case.
Eley further fails to explain how he was prejudiced by his counsel's failure to record plea negotiations. Eley argues that at one point he was offered a six year maximum sentence for involuntary manslaughter but refused to testify against accomplice Melvin Green. The Ohio Supreme Court has consistently held the state's willingness to make a plea offer does not render a defendant's death sentence inappropriate as a matter of law, nor can it be used as a mitigating factor. The court clearly stated a plea bargain is not "relevant to the issue of whether the offender should be sentenced to death." State v. Webb (1994), 70 Ohio St.3d 325,336. Therefore, we conclude the failure to ensure a complete record did not prejudice Eley.
Next, Eley alleges counsel failed to properly investigate and interview witnesses who purportedly would have testified "Melvin Green told them that he shot the victim and Eley was being a `stand-up guy' for not testifying against him". In support of this argument, Eley has attached as Exhibit #23 an affidavit from his cousin Butch Bankhead who claims Melvin Green "personally" confessed to the shooting.
There are several problems with this argument. First, it is not readily apparent by Butch Bankhead's statement at what point in time Melvin Green allegedly made his so-called "confession". If Green made this statement sometime after the trial, it would be irrelevant to Eley's post-conviction relief petition. Pursuant to R.C. 2953.21, a defendant will only be entitled to relief for constitutional violations occurring at the time of trial and conviction. Consequently, only evidence that could have been discovered by counsel at the time of the trial may be considered when reviewing this claim. Secondly, this statement constitutes double hearsay elicited from a close family member. Eley fails to explain why his cousin did not come forward sooner or why Eley did not suggest to trial counsel that his entire family be questioned. Lastly, it is not apparent that, by calling Butch Bankhead as a witness, the outcome of the trial would have been any different. Eley had already confessed to the crime and refused to implicate his accomplice Melvin Green. Consequently, counsel did not prejudice Eley by not calling Butch Bankhead.
In a related assertion, Eley states "[t]rial counsel was ineffective for failing to investigate and talk to people who would have testified regarding Petitioner's extensive alcohol and drug abuse history, his lack of treatment for his addictions, and to more fully present the extreme alcohol and drug abuse by Petitioner prior to the crime and prior to his arrest and statement to the police." Eley has attached numerous affidavits given by his family and friends to support this contention.
It is the obligation of counsel to make reasonable investigations or to make a reasonable decision that makes specific investigations unnecessary. A particular decision not to investigate must be examined for reasonableness under the circumstances with strong measures of deference to counsel's judgments. Strickland, supra. The failure of trial counsel to call a witness is a decision concerning trial strategy, and, absent a showing of prejudice, such failure does not deprive a defendant of ineffective assistance of counsel. State v. Reese (1982),8 Ohio App.3d 202, 203.
Eley's counsel requested a pre-sentence investigation report in lieu of conducting a specific investigation. At Eley's sentencing hearing, the following was submitted by counsel as mitigating evidence: 1) Eley came from a dysfunctional family; 2) despite this, he established positive relationships with other family members; 3) he suffers from chronic alcoholism and polysubstance abuse and related blackouts, which caused him to act out impulsively; 4) he exercises poor judgment with minimum control of his behavior; 5) he suffered head injuries as a teenager; 6) he has behaved well while incarcerated and has undergone a religious conversion, and; 7) Melvin Green, the instigator and planner of the crimes, has gone unpunished. Eley, 77 Ohio St.3d at 185.
It is well settled that when a defendant presents evidence de hors the record that is cumulative of, or alternative to, material presented at trial, the court may properly deny a hearing. State v. Combs (1994),100 Ohio App.3d 90, 98 citing Powell, supra, at 270. Here, a quantum of information contained in the affidavits appears to be repetitive of evidence presented by trial counsel at the mitigation stage. New evidence, for example, the claim that Eley was a forceps delivery, is of the type that would normally be rejected by three judge panels when weighing mitigating factors.
Counsel opted to request a pre-sentence investigation report. This decision resulted in the amassing of the same types of evidence that would have been found had a specific investigation been conducted. Consequently, as Eley has shown no prejudice, this assertion lacks merit.
For his next proposition, Eley claims trial counsel was ineffective for failing to present his extreme intoxication as a defense to the specific intent crime with which he was charged. In this case, intoxication may have been a defense to aggravated murder if it negated the purpose element of the crime. State v. Hicks (1989), 43 Ohio St.3d 72, 74-75. Eley has failed to attach affidavits or additional evidence in support of this contention. Moreover, the record reflects no evidence that Eley was intoxicated at the time of the murder. In fact, testimony given by Dr. Darnall seems to indicate the contrary; that Eley was not suffering from a drug or alcohol induced blackout at the time of the offense but rather was sane, competent and had good contact with reality.
Eley declares counsel was ineffective for failing to request independent expert assistance of a toxicologist and/or a pharmacologist to present evidence during both phases of his trial. Again, Eley offers no evidence outside of the record to support this claim, which takes it out of the purview of post- conviction review. Furthermore, it is merely cumulative or alternative to the evidence presented at trial by both Dr. Morrison and Dr. Darnall. Eley points to counsel's failure to request a change of venue and to place on the record the Arab community's prejudicial influences and acts. As discussed above, Eley misstated the record. Counsel filed two motions which were not ruled upon because Eley chose to waive his right to a jury trial.
Eley next asserts counsel was ineffective for requesting a pre-sentence investigation report. This evidence is found in the record. Consequently, it could have been addressed on direct appeal and is barred by res judicata. Furthermore, the decision to request a pre-sentence report is one of sound trial strategy and such trial strategy should not be second-guessed by reviewing courts in a claim for ineffective assistance of counsel. State v. Esparza (1988), 39 Ohio St.3d 8.
Lastly, Eley asserts trial counsel was ineffective for failing to object to the acts of prosecutorial misconduct that occurred in both phases of his trial, which was raised on direct appeal and incorporated by way of reference. This claim fails in two respects. First, it has already been raised on direct appeal, thus, it is barred by res judicata. Secondly, Eley has presented no evidence de hors the record to support this contention. Accordingly, this claim is meritless.
 C.
For his Eleventh Claim for Relief, Eley maintains counsel was ineffective for not hiring an independent toxicologist or pharmacologist and a neuro-psychologist for the mitigation phase of his trial. He states he was prejudiced by this decision since "he was unable to present evidence of relevant mitigation evidence under R.C. 2929.04(B) and (C)."
Through his own admission, Eley demonstrates his claim is barred by resjudicata. In his petition, Eley states evidence adduced at trial, "indicated that Petitioner had used alcohol and drugs in the past, and was under the influence of alcohol and drugs at the time of the offenses which he was convicted, and was under the influence of alcohol at the time of his statement." This claim could have been, and was therefore required to be, raised on direct appeal as it involves no evidence dehors the record, and therefore, is meritless.
 D.
Eley asserts as his twelfth claim for relief that his jury trial waiver was in violation of his constitutional rights. On direct appeal, Eley contended the trial panel failed to ensure an intelligent, voluntary, and knowing jury waiver, because it failed to consider his limited intellectual ability in assessing his knowledge of the relevant circumstances and likely consequences of his jury trial waiver. The Ohio Supreme Court rejected this claim in Eley's direct appeal.
 "In this case, Eley submitted a written jury waiver and opted for a trial before a three-judge panel. While the court questioned Eley at the time of about his jury waiver, such an interrogation is not required to determine whether an accused is fully apprised of his or her right to a jury trial. State v. Jells
(1990), 53 Ohio St.3d 22, 25-26. Eley's bald assertion that he is so mentally challenged as to be incapable of giving a valid waiver is not supported in the record. Moreover, the trial court complied with all the requirements of a jury waiver in this case. See State v. Pless (1996), 74 Ohio St.3d 333." Eley, 77 Ohio St.3d at 182.
To the extent Eley asserts the trial court failed to conduct a sufficient colloquy to guarantee that he made an intelligent, voluntary and knowing jury waiver, this claim for relief is barred by resjudicata. Eley's contention that he was unable to intelligently waive his rights due to his incompetence is similarly barred.
In addition to alleged incompetency and psychological difficulties, Eley claims his counsel failed to provide him with information relevant to his jury waiver. He specifically lists the following as lacking from their conversations:
 "175) Counsel did not inform Petitioner that he had an unqualified right to withdraw his jury waiver at any time prior to trial and proceed to have his case tried to a jury. Exhibit 1.
 "176) Counsel did not inform Petitioner that if he elected to be tried by a jury, all twelve of those jurors had to unanimously agree to convict him of his capital charge and to sentence him to death. Exhibit 1.
 "177) Counsel did not inform Petitioner if he elected to be tried by a jury, his life could be spared if only one juror found that the death penalty was not the appropriate sentence for him. Exhibit 1.
 "178) Counsel did not inform Petitioner that if he chose a trial by jury and the jury recommended a life sentence, that the recommendation would be binding on the trial court. Exhibit 1.
 "179) Counsel did not inform Petitioner that once he chose to be tried by a three-judge panel, that panel would be able to impose a sentence of death on a lower standard of proof than that required by a jury.
 "180) Counsel did not inform Petitioner that once he chose to be tried by a three-judge panel, the appellate courts would apply a presumption of correctness to any errors that occurred at his capital trial. This information was material to Petitioner because of the unique facts of his case."
As discussed above, the Ohio Supreme Court has already determined Eley received the requisite instructions for ensuring a valid jury waiver through both a colloquy with the trial court and a detailed waiver form.Res judicata bars this claim. Moreover, Eley has attached an affidavit of his trial attorney which states the following with regard to Eley's waiver:
 "Another example of when John would not assist us in his own defense, in addition to John's resistance to cooperate with the Prosecutor and the experts was in his waiver of his right to a jury trial. Co-counsel and I did not want to waive his right to a trial by jury, but that is what John wanted. In hindsight I believe John wanted to go before three judge panel due to his remorse for his accidental killing of the victim in an effort to get the trial over quicker. I still do not believe that John made a rational decision in waiving his right to a jury trial." (Exhibit 25)
Hence, the only evidence de hors the record demonstrates that Eley was encouraged to avail himself of his right to a jury trial. The statement discloses Eley was counseled on the legal repercussions of waiving a trial by jury and his counsel advised against waiver.
Furthermore, there is no mention by Eley's attorney of any deficiencies in his representation. It is well settled that a petitioner's own self-serving affidavit alleging a constitutional violation is insufficient to mandate a hearing. See State v. Kapper (1983),5 Ohio St.3d 36, 37-38. Eley has offered no additional evidence regarding his claim that his conversation with counsel regarding his waiver was insufficient. Consequently, Eley failed to sustain his initial burden of demonstrating substantive grounds for relief. This claim is meritless.
 E.
For his thirteenth claim for relief, Eley contends he was denied effective assistance of counsel at the mitigation stage, reasserting several of the above claims, alleging counsel failed to present any mitigating factors due to their failure to investigate and prepare. He again lists possible mitigating factors elicited from his family members.
However, this claim fails for the same reasons discussed above. His counsel made the decision to request a pre-sentence investigation report. This is not unreasonable considering the fact that it uncovered similar evidence that would have been uncovered had a specific investigation been conducted. Therefore, this final claim of ineffective assistance of counsel is meritless.
 III. Racial Disparity of Those Sentenced to Death
Eley's first claim for relief contends his conviction is void or voidable because the death penalty is disproportionately meted out to defendants who are either racial minorities or are defendants accused of killing white victims. In support of this argument, Eley offers statistics relating to the racial disparity of the inmates placed on Ohio's Death Row. The United States Supreme Court rejected this very argument in McCleskey v. Kemp (1987), 481 U.S. 279, 297, 107 S.Ct. 1756,1769-1770, 95 L.Ed.2d 262, 281 holding that mere statistics do not establish the administration of capital punishment violates equal protection. To sustain his claim, a defendant must show that racial considerations affected the sentencing process in his case. State v.Steffen (1987), 31 Ohio St.3d 111.
Eley has offered absolutely no evidence that improper racial considerations prompted the three judge panel's imposition of death in his case. Without any evidence that racial bias affected the sentencing process in his case, Eley's claim of violation of his right to equal protection must fail. Id. This claim is meritless.
 IV. Selective Prosecution
Eley's seventh claim for relief, that discriminatory selective prosecution and prosecutorial misconduct must void his conviction, asserts he was "over-indicted" on a greater charge to coerce and force him to plea bargain to a lesser charge. He claims both his state and federal constitutional right to equal protection was violated in that his death sentence was inappropriate and disproportionate to the others who were similarly situated. Eley provides data to support this claim, purportedly demonstrating the influence the prosecutor wields in amending or dismissing capital indictments.
Eley similarly offers evidence de hors the record that indicates the prosecutor offered Eley a chance to plea bargain to a lesser included homicide offense. Eley contends "he should not have been over-indicted to a higher degree felony if the evidence justified a lesser offense, in order that the prosecutor would have discriminatory selective power to reduce at his discretion." As noted by the Ohio Supreme Court, "plea agreements are an essential and necessary part of the administration of justice." State v. Carpenter (1993), 68 Ohio St.3d 59, 61 citingSantobello v. New York (1971), 404 U.S. 257, 261, 92 S.Ct. 495, 498,30 L.Ed.2d 432, 437.
In State v. Flynn (1980), 63 Ohio St.2d 132, the Ohio Supreme Court adopted the following test to evaluate selective- prosecution claims:
 "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e. based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." Id. at 134.
Eley fails to satisfy both prongs of the test. First, Eley has made no showing that others "similarly situated have not generally been proceeded against." Co-defendant Melvin Green was prosecuted, but acquitted due to Eley's failure to testify against him. Secondly, Eley fails to present any evidence that the prosecutor acted in bad faith by proceeding against him solely upon considerations such as race or religion. Consequently, this claim is meritless as Eley has not met the burden of demonstrating that he was both singled out and prosecuted in bad faith.
We find all thirteen claims set forth Eley's first assignment of error to be meritless. Therefore, the trial court did not err in denying a hearing on these allegations, nor did it err in summarily dismissing them.
Appellant's Second Assignment of Error
In his second assignment of error, Eley alleges:
 "The trial court erred when it did not rule as to appellant's competency to proceed with his post-conviction action."
On January 28, 1997, a hearing regarding Eley's competency to proceed on post-conviction collateral review was held by the trial court. Dr. Jeffrey Smalldon offered testimony before the court which supported counsel's belief that Eley was not competent to proceed with his post-conviction petition. On February 26, 1997, the trial court issued a judgment entry stating the following:
 "The rights pertaining to competency do not attach to a post-conviction proceeding. Eley seeks competency pursuant to O.R.C. 2945.37 which assesses a defendant's competency to stand trial. There is no criminal case before the Court, and the Court finds no legal basis for the petitioner's motion for evaluation of his current mental competency and overrules the motion."
Eley first argues the trial court had the authority to order an evaluation of his competency to proceed with his state post-conviction action, reasoning his life is at issue and, therefore, is constitutionally entitled to be deemed competent to pursue post-conviction relief. However, Eley has failed to point to any authority which would require a competency hearing to be given at this stage of proceedings.
A post-conviction proceeding is not an appeal of a criminal conviction, rather, it is a collateral civil attack on a criminal judgment. Steffen, supra, at 410. Significantly, state post-conviction review is not a constitutional right. Id. Accordingly, in a post-conviction proceeding, a convicted defendant has only the rights granted to him by the legislature. State v. Moore (1994),99 Ohio App.3d 748, 751.
An example of statutorily granted rights is the right to counsel during post-conviction proceedings. Although an indigent petitioner does not have a state or federal constitutional right to representation by an attorney in a post-conviction proceeding, pursuant to R.C. 120.16(A)(1) and (D), the petitioner is entitled to representation if the public defender concludes the issues raised by the petitioner have arguable merit. Statev. Crowder (1991), 60 Ohio St.3d 151 at paragraph one of the syllabus.
Applying this analysis, we conclude the right to a determination of competency to assist with post-conviction proceedings must be provided for by statute. However, the only time competency is deemed relevant by statute are at the time of the offense and at the time of trial. R.C2945.37 and R.C. 2945.371. Conversely, if a person is insane, they cannot be tried, sentenced, or executed. R.C. 2945.38. Competency must not be confused with sanity.
In this case, Eley requested a competency hearing. If Eley's counsel had raised the issue of his sanity, R.C. 2949.28 would mandate an inquiry into Eley's mental capacity.
 "(A) As used in this section and section 2949.29 of the Revised Code, "insane" means that the convict in question does not have the mental capacity to understand the nature
 of the death penalty and why it was imposed upon the convict.
 "(B) (1) If a convict sentenced to death appears to be insane, the warden or the sheriff having custody of the convict, the convict's counsel, or a psychiatrist or psychologist who has examined the convict shall give notice of the apparent insanity to whichever of the following is applicable:
 "(b) If the convict was tried by a three-judge panel, to any of the three judges who imposed the sentence upon the convict or, if each of those judges is unavailable, to another judge of the same court of common pleas.
 "(2) Upon receiving a notice pursuant to division (B)(1) of this section, a judge shall determine, based on the notice and any supporting information, any information submitted by the prosecuting attorney, and the record in the case, including previous hearings and orders, whether probable cause exists to believe that the convict is insane. If the judge finds that probable cause exists to believe that the convict is insane, the judge shall hold a hearing to determine whether the convict is insane. If the judge does not find that probable cause of that nature exists, the judge may dismiss the matter without a hearing." R.C. 2949.28.
Although there is no corresponding statute requiring a trial court to hold a competency hearing as a part of post- conviction proceedings, Eley argues that because "death is different", more process is due, not less. He cites the recent Ohio Supreme decision of State v. Berry (1997),80 Ohio St.3d 371, which mandated the evaluation of a capital defendant's competency during a post-conviction proceeding. In Berry, the defendant sought to terminate further challenges to his conviction and sentence after it had been upheld by the Ohio Supreme Court on direct appeal.
Berry's lawyer challenged his client's competency to make such a decision. The Ohio Supreme Court then ordered a competency hearing and appointed a doctor to evaluate his condition. The court set forth the following standard by which Berry's competency was to be evaluated:
 "A capital defendant is mentally competent to abandon any and all challenges to his death sentence, including appeals, state post-conviction collateral review, and federal habeas corpus, if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue further remedies. * * * The defendant must fully comprehend the ramifications of his decision, and must possess the `ability to reason logically,' i.e., to choose `means which relate logically to his ends.'" (Citations omitted) Berry, 74 Ohio St.3d at 1504.
 Berry differs significantly from the present case in that the defendant was forgoing rights that were guaranteed by law. Here, Eley wishes to continue to pursue all avenues available to him to challenge his death sentence. This distinguishable factor is also highlighted in State v.Ashworth (1998), 85 Ohio St.3d 56. In Ashworth, a defendant's competency was called into question when he decided to abandon his right to present mitigating evidence.
 "In a capital case, when defendant wishes to waive presentation of all mitigating evidence, a trial court must conduct an inquiry of the defendant on the record to determine whether the waiver is knowing and voluntary.
 "A defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence. The defendant must fully comprehend the ramifications of his decision, and must possess the ability to reason logically, i.e., to choose means that relate logically to his ends." Id. at paragraphs one and two of the syllabus.
We also note that Berry and Ashworth deal with foregoing rights that are afforded to those defendants who have been criminally accused. Although Eley has been accused and convicted of a capital crime, he was not before the court in a criminal proceeding, rather, a collateral attack of a criminal proceeding. It is well settled that post-conviction proceedings are civil proceedings. Milanovich, supra.
The State presents by way of analogy the treatment of the issue of competency evaluations in probation revocation proceedings. These proceedings are specifically deemed to be a stage of the criminal prosecution. State v. Bell (1990), 66 Ohio App.3d 52, 57. In State v.Qualls (1988), 50 Ohio App.3d 56, the court held a probationer had no statutory right to determine his competency to participate in probation revocation proceedings. "It is within the sound discretion of the trial court to determine whether to grant a requested competency hearing during probation revocation proceedings." Id. at 58.
The State is correct in its contention that both of these proceedings are civil in nature, however, there is a difference we must take into account. In a probation revocation proceeding, all that is at stake is a probationer's conditional freedom. The United States Supreme Court inMorrisey v. Brewer (1972), 408 U.S. 471, 480, 92 S.Ct. 2593, 2600,33 L.Ed.2d 484, opined that revocation does not deprive an individual of the absolute right of liberty to which every citizen is entitled, but only a conditional right of liberty properly dependent on the observance of special restrictions.
In a post-conviction relief proceeding, the petitioner's life is at stake. Thus, it is tempting for this court to grant Eley the requested competency hearing considering the nature of this case. However, we must exercise judicial restraint and acknowledge that a petitioner receives no more rights than those granted by the statute. State v. Calhoun, (1999),86 Ohio St.3d 279.
The issue in Berry is slightly different than the issue before us. However, this subtle nuance is significant. Eley is arguing here that the trial court erred by concluding he did not have the right to a competency hearing to determine his ability to assist counsel during post-conviction collateral review. Conversely, the issue resolved by the Ohio Supreme Court in the Berry line of cases is that a capital defendant is entitled to a competency hearing when he is seeking to terminate all further challenges to his death sentence.
 "[W]e hold that the Ohio Constitution does not compel us to force post-conviction review upon a competent individual who has decided, for reasons of his own, not to seek it." State v. Berry
(1997), 80 Ohio St.3d 371, 385.
 Berry stands for the proposition that a competency determination must first be made to ensure a capital defendant is competent to make that decision. Once he or she is deemed competent, and then decides to forego all further challenges, the decision must be respected, for "however wise or foolish his decisions, they are his." Id.
Consequently, we cannot find that a post-conviction proceeding should be treated as a quasi-criminal proceeding where the petitioner must be competent to participate. Inasmuch as the post-conviction statute does not provide for a competency hearing at this stage, and guided by Berry, we conclude the trial court did not abuse its discretion by refusing a competency hearing. We specifically hold a capital defendant is neither statutorily nor constitutionally entitled to a competency hearing as a part of his or her post-conviction proceedings. Eley's second assignment of error is meritless.
For the forgoing reasons, the trial court did not err by summarily dismissing Eley's post-conviction petition, or by denying his request for a competency hearing. As both of Eley's assignments of error are meritless, the decision of the trial court is affirmed.
Vukovich, P.J., Concurs.
Waite, J., Concurs.